39 A.3d 202

STATE OF NEW JERSEY, IN THE INTEREST OF K.O., A MINOR.

Superior Court of New Jersey
Appellate Division

Submitted February 8, 2012—Decided March 1, 2012.

556

Before Judges LIHOTZ, WAUGH, and ST. JOHN.

*Joseph E. Krakora,* Public Defender, attorney for appellant K.O. (*Alyssa Aiello,* Assistant Deputy Public Defender, of counsel and on the brief).

*Robert D. Bernardi,* Burlington County Prosecutor, attorney for the State (*Jennifer B. Paszkiewicz,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

WAUGH, J.A.D.

K.O. (a juvenile to whom we refer by the fictitious name Kyle) appeals from the Family Part's order of disposition adjudicating him a delinquent and committing him to the custody of the New Jersey Juvenile Justice Commission (JJC) for an aggregate of five years, including an extended term of two years. We affirm both the adjudication and the disposition.

## I.

We discern the following facts and procedural history from the record on appeal.

The charges against Kyle arose from a robbery in Willingboro on the evening of August 28, 2009. The teenage victim testified that she was walking home when she was tackled from behind and knocked down. She observed three male attackers. One of the males punched her in the face. As two of the males were attempting to remove her sneakers, the third told her that she would be shot if she did not give up her sneakers and her cell phone. She did not see a gun, and did not believe that the males

had one. The victim took a folding knife out of her pocket and slashed the leg of one of the males. Her attackers then ran from the scene with the victim's sneakers.

Kyle was identified as a suspect on the following day, after he sought treatment at Lourdes Medical Center for a "two-inch laceration on the rear of his right leg above the knee." He told police that he had been attacked by three males the prior evening. Kyle was charged with conduct that, had it been committed by an adult, would have constituted first-degree robbery, contrary to *N.J.S.A.* 2C:15-1. Further investigation revealed that DNA taken from blood traces on the victim's knife matched Kyle's DNA.

Kyle was tried on July 17 and 20, 2009. The judge adjudicated him delinquent. However, because the judge concluded that the State had not met its burden to prove that there was a gun, the finding was based on conduct that would constitute second-degree robbery if committed by an adult.

In 2009, Kyle had been adjudicated delinquent on the basis of conduct that would have been second-degree aggravated assault had it been committed by an adult, and had been committed to a juvenile facility. The State moved for an extended term pursuant to *N.J.S.A.* 2A:4A-44(d)(3), which allows the judge to impose an extended term for a juvenile "if [the judge] finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility." Kyle opposed the motion, arguing that the statute should be interpreted as requiring two such adjudications prior to the matter on which the extended term was to be imposed.

The judge granted the State's motion, determining that the statute allowed the pending offense to count as one of the "two separate occasions" required for imposition of an extended term. He committed Kyle to the custody of the JJC for three years for the offense and an additional two years for the extended term. This appeal followed.

## II.

Kyle raises the following arguments on appeal:

*POINT I:* [KYLE'S] ATTORNEY WAS INEFFECTIVE FOR COUNSELING [KYLE] AGAINST TESTIFYING AT TRIAL. (Not raised below).

*POINT II:* THE JUDGE ERRED IN SENTENCING [KYLE] TO AN EXTENDED TERM OF INCARCERATION.

    A.  [Kyle] Did Not Have The Requisite Prior Record To Support An Extended–Term Sentence.

    B.  Even If [Kyle] Had The Requisite Prior Record For An Extended–Term Sentence, Such A Sentence Was Not Warranted.

### A.

We decline to consider Kyle's argument that he received constitutionally ineffective assistance of counsel at his trial. Allegations of ineffective assistance of counsel are ordinarily not raised on direct appeal because they usually require consideration of facts that are not part of the record, as is the case here. *See State v. Preciose,* 129 *N.J.* 451, 460, 609 *A.*2d 1280 (1992). If Kyle wishes to pursue the issue, he may do so in a petition for post-disposition relief. *R.* 5:24–6; *R.* 3:22.

### B.

Kyle next argues that the judge misinterpreted the provisions of *N.J.S.A.* 2A:4A–44(d)(3) to allow imposition of an extended term when the pending offense is counted as the second qualifying offense. Put another way, Kyle argues that the word "prior" or "previously" should be read into the statute. The State argues, and the trial judge determined, that the plain meaning of the statute does not contain such a requirement.

Because statutory interpretation is an issue of law, we owe no deference to the trial judge's interpretation, but rather review the issue de novo. *State v. Goodman,* 415 *N.J.Super.* 210, 225, 1 *A.*3d 767 (App.Div.2010), *certif. denied,* 205 *N.J.* 78, 12 *A.*3d 210 (2011). Our "overriding goal" in interpreting a statute is to "determine as best we can the intent of the Legislature, and to

give effect to that intent." *State v. Hudson*, 209 *N.J.* 513, 529, 39 *A.*3d 150, 2012 *WL* 360464 (2012) (citing *State v. Shelley*, 205 *N.J.* 320, 323, 15 *A.*3d 818 (2011); *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005)).

We start with the language of the statute itself, which the Supreme Court has held is " 'the best indicator' " of the intent of the Legislature. *Ibid.* (quoting *State v. Gandhi*, 201 *N.J.* 161, 176, 989 *A.*2d 256 (2010)); *see also N.J.S.A.* 1:1–1 ("In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

We will not go beyond the language of the statute if it "leads to a clearly understood result." *State v. Hudson*, *supra*, 209 *N.J.* at 529, 39 *A.*3d 150 (citing *Shelley*, *supra*, 205 *N.J.* at 323, 15 *A.*3d 818). "[E]xtrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question;" they are only used if "the statutory language results in more than one reasonable interpretation." *Ibid.* (citing *Shelley*, *supra*, 205 *N.J.* at 323–24, 15 *A.*3d 818).

There are two provisions in *N.J.S.A.* 2A:4A–44(d) that permit extended terms, subsections (d)(3) and (d)(4). Because they are related, we conclude that they must be read together for the purposes of interpreting *N.J.S.A.* 2A:4A–44(d)(3). *In re Gray–Sadler*, 164 *N.J.* 468, 485, 753 *A.*2d 1101 (2000) ("When interpreting different statutory provisions, we are obligated to make every effort to harmonize them, even if they are in apparent conflict." (citing *State v. Federanko*, 26 *N.J.* 119, 130, 139 *A.*2d 30 (1958))). The two subsections provide as follows:

(3) Upon application by the prosecutor, the court may sentence a juvenile who has been convicted of a crime of the first, second, or third degree if committed by an adult, to an extended term of incarceration beyond the maximum set forth in

paragraph (1) of this subsection, if it finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility. The extended term shall not exceed five additional years for an act which would constitute murder and shall not exceed two additional years for all other crimes of the first degree or second degree, if committed by an adult, and one additional year for a crime of the third degree, if committed by an adult.

(4) Upon application by the prosecutor, when a juvenile is before the court at one time for disposition of three or more unrelated offenses which, if committed by an adult, would constitute crimes of the first, second or third degree and which are not part of the same transaction, the court may sentence the juvenile to an extended term of incarceration not to exceed the maximum of the permissible term for the most serious offense for which the juvenile has been adjudicated plus two additional years.

In our view, a fair reading of the language of those two subsections of the statute, taken together, leads to the conclusion that the pending offense can count as one of the "two separate" offenses required for an extended term under subsection (d)(3), as long as the juvenile has previously been committed to an adult or juvenile facility.

As the State argues, subsection (d)(3) does not explicitly provide that the two required offenses be "prior" offenses, although at least one of them must have been a prior offense because of the requirements (1) that the two offenses have been adjudged "on at least two separate occasions" and (2) that the juvenile "was previously committed to an adult or juvenile facility." We note that the Legislature used the word "previously" with respect to the second of those requirements, but not with respect to the first. Had it intended that the two qualifying offenses be prior offenses, the Legislature could easily have provided that the judge had to find that "the juvenile was *previously* adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was *previously* committed to an adult or juvenile facility."

In our view, the interpretation adopted by the trial judge finds further support in the language of subsection (d)(4), which allows imposition of an extended term without a prior incarceration, but only on the basis of three eligible adjudications. That provision

suggests that a third adjudication is only required for an extended term when there has been no prior incarceration. While we acknowledge that the comparison is not perfect, because of the requirement in subsection (d)(4) that the three offenses be the subject of disposition at the same time, we nevertheless find the wording of subsection (d)(4) helpful in interpreting subsection (d)(3).

Although we do not find the language of subsection (d)(3) to be ambiguous, we note that a review of extrinsic sources would, in any event, compel the same conclusion. The language at issue here was contained in *N.J.S.A.* 2A:4A–44 when it was enacted in 1982 as section 25 of the New Jersey Code of Juvenile Justice (Juvenile Code), *L.* 1982, *c.* 77, which was codified as *N.J.S.A.* 2A:4A–20 to –92. The Juvenile Code "provides a comprehensive scheme that empowers Family Part judges to tailor dispositions toward aiding and rehabilitating juveniles charged with delinquent acts, while simultaneously ensuring protection of the public from dangerous and/or repetitive juvenile offenders." *State ex rel. C.V.,* 201 *N.J.* 281, 285, 990 *A.*2d 640 (2010).

The overall purpose of the Juvenile Code was outlined in the Senate Judiciary Committee Statement (Committee Statement) to Assembly Bill 641 (1982), in part, as follows:

> This bill recognizes that the public welfare and the best interests of juveniles can be served most effectively through an approach which provides for harsher penalties for juveniles who commit serious acts or who are *repetitive offenders,* while broadening family responsibility and the use of alternative dispositions for juveniles committing less serious offenses.
>
> [Committee Statement following *N.J.S.A.* 2A:4A–20, at 173 (West 2011) (emphasis added).]

With respect to the provision for extended terms found in subsection (d)(3), the Committee Statement provides: "Maximum terms of incarceration for various degrees of offenses are established with a provision for an extended term beyond such maximums for juveniles who commit first or second or third degree crimes and who are *repetitive offenders* who have previously been incarcerated." *Id.* at 178 (emphasis added).

In revising the law with respect to juvenile justice and enacting the Juvenile Code, the Legislature borrowed provisions and concepts from Title 2C, *N.J.S.A.* 2C:1 to 2C:64, which had been enacted four years earlier. *N.J.S.A.* 2A:4A–44, the section of the Juvenile Code governing custodial sentences, incorporates such Title 2C concepts as aggravating and mitigating factors, *N.J.S.A.* 2C:44–1(a) and (b); presumptions of incarceration and non-incarceration, *N.J.S.A.* 2C:44–1(d) and (e); and extended terms, *N.J.S.A.* 2C:44–3. In some cases, Title 2C language is imported without substantive change, in others it is modified. For example, *N.J.S.A.* 2A:4A–44(a)(1) and (2) contain aggravating and mitigating factors, some of which essentially track the language of their Title 2C counterparts, while others have been substantively modified. In addition, there are factors that do not have Title 2C counterparts.

*N.J.S.A.* 2C:44–3(a), the Title 2C provision concerning extended sentences for "persistent offenders," provides that

> [a] persistent offender is a person who at the time of the commission of the crime is 21 years of age or over, who has been *previously convicted on at least two separate occasions of two crimes, committed at different times,* when he was at least 18 years of age, if the latest in time of these crimes or the date of the defendant's last release from confinement, whichever is later, is within 10 years of the date of the crime for which the defendant is being sentenced.
>
> [ (Emphasis added.) ]

Although the words "persistent offender" or "repetitive offender" are not found in *N.J.S.A.* 2A:4A–44(d)(3), it clearly sets forth the Juvenile Code's provisions with respect to extended terms for, in the words of the Senate Committee, juveniles "who are repetitive offenders who have previously been incarcerated." Committee Statement, *supra,* at 178. Although the language of *N.J.S.A.* 2A:4A–44(d)(3) echoes that of *N.J.S.A.* 2C:44–3(a), we find it very significant that, unlike the Title 2C provision, it does not contain the word "previously."

Thus, while *N.J.S.A.* 2C:44–3(a) speaks of "a person ... who has been previously convicted on at least two separate occasions of two crimes," *N.J.S.A.* 2A:4A–44(d)(3) speaks of a "juvenile [who]

was adjudged delinquent on at least two separate occasions." Given the close relationship between the language in the Juvenile Code and Title 2C, we conclude that the Legislature refrained from using "previously" in *N.J.S.A.* 2A:4A–44(d)(3) because it did not intend that subsection (d)(3) be interpreted as requiring that both qualifying offenses be prior offenses. *See T.H. v. Div. of Dev. Disabilities,* 189 *N.J.* 478, 492, 916 *A.*2d 1025 (2007) ("[W]here the Legislature specifically includes a requirement in one subsection of a statute but not in another, the term should not be supplied where it has been omitted." (citing *Higgins v. Pascack,* 158 *N.J.* 404, 419, 730 *A.*2d 327 (1999); *Marshall v. Western Union Tel. Co.,* 621 *F.*2d 1246, 1251 (3d Cir.1980))). The omission of the word "previously" is "too obvious to ignore." *See Higgins, supra,* 158 *N.J.* at 419, 730 *A.*2d 327 (citing *Abbamont v. Piscataway Bd. of Educ.,* 138 *N.J.* 405, 426, 650 *A.*2d 958 (1994)).

A reading of subsection (d)(3) to permit imposition of an extended term for the second qualifying adjudication, as long as the juvenile has previously been incarcerated, is consistent with the Juvenile Code's stated legislative purpose of "provid[ing] for harsher penalties for juveniles who commit serious acts or who are repetitive offenders." Committee Statement, *supra,* at 173. It is also consistent with a plain reading of the language of the statute itself, alone and in light of the legislative history we have outlined above.

Consequently, we affirm the trial judge's determination that Kyle was eligible for an extended term.

## C.

Finally, Kyle argues that, even if he was eligible for an extended term, the judge should not have imposed one. We disagree.

New Jersey law prescribes a "system for 'structured discretion' in sentencing." *State v. Bieniek,* 200 *N.J.* 601, 607, 985 *A.*2d 1251 (2010) (quoting *State v. Roth,* 95 *N.J.* 334, 345, 471 *A.*2d 370 (1984)). Appellate review of a juvenile disposition is guided by

well-established sentencing standards. We examine whether the trial judge followed lawful sentencing guidelines and determine whether the sentence imposed could have been reasonably reached based upon the evidence presented. *Roth, supra,* 95 *N.J.* at 365–66, 471 *A.*2d 370. We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." *State v. O'Donnell,* 117 *N.J.* 210, 215, 564 *A.*2d 1202 (1989) (citing *State v. Jarbath,* 114 *N.J.* 394, 400–01, 555 *A.*2d 559 (1989); *Roth, supra,* 95 *N.J.* at 365, 471 *A.*2d 370).

Under the Juvenile Code, the judge, in considering whether a custodial disposition is appropriate, must weigh the aggravating and mitigating factors set forth in *N.J.S.A.* 2A:4A–44(a). The judge must then place on the record the factual basis supporting the findings of the particular factors affecting the sentence, as well as the reasons for the disposition chosen, whether custodial or non-custodial. *See N.J.S.A.* 2A:4A–44(d)(1); *R.* 5:24–3.

The trial judge in this case thoroughly canvassed the applicable aggravating factors and found no mitigating factors, setting forth his reasons for each determination. He found that "the aggravating factors grossly outweigh the mitigating factors," commenting that "this case ... cries out for the imposition of the maximum term, allowable by law, to protect the public." He placed great emphasis on Kyle's most serious prior adjudication, an offense that would have been an aggravated assault if committed by an adult, and Kyle's failure to respond to prior non-custodial and custodial dispositions. The judge observed that he had "tried to deter [Kyle] from violence with every available alternative: probation, house arrest, home detention, [the Juvenile Intensive Supervision Program], a sentence to the Training School, and [Kyle] has returned, once again, to commit a violent offense."

We find no abuse of the judge's sentencing discretion in his decision to impose a five year aggregate term, three years for the offense and two years as extended term.

Affirmed.