SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State in the Interest of K.O., a minor** (A-28-12) (070406)

**Argued September 23, 2013 -- Decided February 24, 2014**

**LaVECCHIA, J., writing for the Court.**

The issue in this appeal is whether N.J.S.A. 2A:4A-44(d)(3) requires two previous adjudications or whether the adjudication for which a juvenile presently is being sentenced may itself count as the second predicate offense that qualifies the juvenile for an extended-term sentence.

On July 20, 2009, Kyle[1] was adjudged delinquent for committing an act that would have constituted second-degree robbery if committed by an adult. That adjudication subjected him to a maximum period of incarceration of three years under section 4A-44(d)(1)(d) of the Juvenile Justice Code (Code), N.J.S.A. 2A:4A-20 to -90. On July 27, 2009, at a disposition hearing, the State moved for the imposition of an extended term of incarceration under section 4A-44(d)(3) of the Code, which authorizes the Family Part court to impose an extended-term sentence on a juvenile adjudged delinquent of a qualifying present offense if the court "finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility."

Kyle had been adjudicated delinquent on three occasions prior to the offense giving rise to this appeal. The first two adjudications involved minor offenses that did not meet section 4A-44(d)(3)'s predicate requirement of first- or second-degree offense adjudications. Also, neither of those adjudications resulted in his commitment to a juvenile detention facility. However, in March 2008 Kyle was adjudged delinquent of second-degree aggravated assault and was sentenced, consistent with a plea-agreement, to twenty-four months' incarceration at the New Jersey Training School. Kyle was subsequently placed in the Juvenile Intensive Supervision Program (JISP). On March 3, 2009, Kyle's participation in the program was terminated after he was deemed noncompliant. The Family Part court, however, dismissed the JISP violation and discharged the few months remaining on Kyle's sentence, noting his approaching eighteenth birthday. Less than two months later, Kyle committed the act of delinquency resulting in his current sentence and this appeal.

In respect of the challenged sentence, the disposition court held, after taking Kyle's prior adjudication on the second-degree aggravated assault charge and the present adjudication into consideration, that as a matter of law Kyle was extended-term eligible under N.J.S.A. 2A:4A-44(d)(3). The court sentenced Kyle to the maximum permissible term of three years at a juvenile detention facility pursuant to N.J.S.A. 2A:4A-44(d)(1) with an additional two-year extended term pursuant to section 4A-44(d)(3).

Kyle appealed his sentence and the Appellate Division affirmed. In re K.O., 424 N.J. Super. 555 (App. Div. 2012). The panel interpreted section 4A-44(d)(3) as permitting the imposition of an extended term whenever there are two separate occasions of a first- or second-degree offense, one of which involved a period of incarceration. Noting that section 4A-44(d)(3) does not refer to previous or prior offenses, the panel rejected the argument that section 4A-44(d)(3) requires two previous adjudications in order for a juvenile to be extended-term eligible for a present adjudication. The panel found that Kyle qualified for an extended term and that the trial court committed no abuse of discretion.

The Supreme Court granted Kyle's petition for certification. 212 N.J. 460 (2012).

---

[1] Kyle is a fictitious name for K.O., the young man who brought this appeal before the Court.

**HELD:** N.J.S.A. 2A:4A-44(d)(3) requires two separate previous predicate adjudications for the imposition of an extended-term sentence on a juvenile, including one that resulted in incarceration in a juvenile or adult facility, exclusive of the adjudication for which the disposition court is sentencing the juvenile.

1. Because statutory interpretation involves the examination of legal issues, it is considered a question of law. Accordingly, a *de novo* standard of review applies on appeal. Statutory language should be given its ordinary meaning and be construed in a common-sense manner. The Court's overriding goal is to discern and effectuate the legislative intent underlying the statutory provision at issue. Where the language is unclear or ambiguous, or if the Legislature's intention is otherwise uncertain, resort may be had to extrinsic aids to "assist [the Court] in [its] understanding of the Legislature's will." Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008). (pp. 9-10)

2. Under N.J.S.A. 2A:4A-44(d)(3), an extended term may be imposed "if [the court] finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility." In this part of the statute, the Legislature has moved to the past tense, and not just for the past adjudication but also for the additional requirement that at least one such adjudication resulted in commitment to a juvenile or adult facility. The words refer to someone who "was adjudicated" and "was previously committed" on at least one such occasion to a facility. Both conditions clearly are from the person's past and do not naturally suggest the inclusion of the present adjudication before the disposition court. The Court is unpersuaded that the failure to include the word "previously" twice when identifying the two required findings compels a plain language reading that the present adjudication may count as one of two separate offenses. The language of section 4A-44(d)(3) points to a natural reading that does not favor the State's position or the extended-term sentence imposed on Kyle. To the extent one could argue that there is some ambiguity in the text of the section, the Court may resort to legislative history. Here, legislative history is silent on the specific issue before the Court. Further, to the extent that section 4A-44(d)(3) is not a model of perfect clarity, because it is a juvenile justice statute involving among the most severe sanctions that can be imposed on a juvenile, principles of lenity deserve consideration. To the extent that reasonable people can differ on whether the Legislature indeed intended to allow for an extended-term sentence for individuals like Kyle, who have only one previous separate predicate offense, not including the offense for which they are being sentenced, the Court concludes that the more lenient construction of the statute should pertain. N.J.S.A. 2A:4A-44(d)(3) requires two separate previous predicate adjudications, including one that resulted in incarceration in a juvenile or adult facility, exclusive of the adjudication for which the disposition court is sentencing the juvenile. The imposition of an extended term for Kyle transgresses that interpretation of the statute. The Court therefore reverses the extended-term sentence imposed. (pp. 10-19)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER** filed a separate, **CONCURRING** opinion, stating that because he does not believe the language of N.J.S.A. 2A:4A-44(d)(3) leads to one clear interpretation, he turns directly to the rule of lenity in the absence of definitive legislative history.

**JUSTICES ALBIN and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE LaVECCHIA's opinion. CHIEF JUSTICE RABNER filed a separate, concurring opinion.**

STATE OF NEW JERSEY
IN THE INTEREST OF
K.O., a minor.

Argued September 23, 2013 -- Decided February 24, 2014

On certification to the Superior Court,
Appellate Division, whose opinion is
reported at 424 N.J. Super. 555 (2012).

Alyssa A. Aiello, Assistant Deputy Public
Defender, argued the cause for appellant
K.O. (Joseph E. Krakora, Public Defender,
attorney).

Frank J. Ducoat, Deputy Attorney General,
argued the cause for respondent State of New
Jersey (John J. Hoffman, Acting Attorney
General, attorney).

JUSTICE LaVECCHIA delivered the opinion of the Court.

Like adult offenders, juveniles adjudged delinquent can be sentenced to an extended-term custodial sentence. The Juvenile Justice Code (Code), N.J.S.A. 2A:4A-20 to -90, authorizes the imposition of an extended-term sentence in two situations and, in this matter, we must construe the statutory prerequisites for one of them.

N.J.S.A. 2A:4A-44(d)(3) authorizes the Family Part court to impose an extended-term sentence on a juvenile adjudged

1

delinquent of a qualifying present offense if the court "finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility." Here, we are called on to determine whether section 4A-44(d)(3) requires two previous adjudications or whether the adjudication for which the juvenile presently is being sentenced may itself count as the second predicate offense.

I.

The facts and procedural history to the sentencing that gives rise to the legal question before the Court can be briefly summarized.

On April 29, 2009, Kyle[2] was charged in a Burlington County Juvenile Complaint with conduct that, if committed by an adult, would have constituted first-degree robbery contrary to N.J.S.A. 2C:15-1. At a hearing conducted on July 20, 2009, the Family Part court, after finding the State had failed to establish beyond a reasonable doubt that the robbery had been committed with intent to kill or inflict serious bodily injury, adjudged Kyle delinquent for committing an act that would have

---

[2] We use the fictitious name Kyle, as did the Appellate Division, to refer to K.O., the young man who brought this appeal before our Court.

2

constituted second-degree robbery if committed by an adult. That adjudication subjected him to a maximum period of incarceration of three years. N.J.S.A. 2A:4A-44(d)(1)(d). If he had been adjudged, as charged, of the equivalent of a first-degree offense, he would have been subject to a maximum period of incarceration of four years. N.J.S.A. 2A:4A-44(d)(1)(c).

A disposition hearing was conducted on July 27, 2009, and the State moved for the imposition of an extended term of incarceration under section 4A-44(d)(3), which provides in full:

> Upon application by the prosecutor, the court may sentence a juvenile who has been convicted of a crime of the first, second, or third degree if committed by an adult, to an extended term of incarceration beyond the maximum set forth in [N.J.S.A. 2A:4A-44(d)(1)], if it finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility. The extended term shall not exceed five additional years for an act which would constitute murder and shall not exceed two additional years for all other crimes of the first degree or second degree, if committed by an adult, and one additional year for a crime of the third degree, if committed by an adult.
>
> [N.J.S.A. 2A:4A-44(d)(3).]

Thus, the State's application sought to have Kyle sentenced to a maximum extended-term sentence totaling five years of incarceration.

3

Kyle had been adjudged delinquent on three occasions prior to the offense giving rise to this appeal. The first two adjudications involved minor offenses that did not meet section 4A-44(d)(3)'s predicate requirement of first- or second-degree offense adjudications: (1) in April 2007 Kyle was adjudged delinquent for disturbing the peace, a disorderly persons offense; and (2) in August 2007 Kyle was adjudged delinquent on a fourth-degree riot complaint. Also, neither of those adjudications resulted in his commitment to a juvenile detention facility.

However, in March 2008 Kyle was adjudged delinquent of second-degree aggravated assault and was sentenced, consistent with a plea agreement, to twenty-four months' incarceration at the New Jersey Training School. As part of the plea agreement in that matter, the State agreed not to oppose recall of Kyle and the other individuals sentenced along with him. See State ex rel. R.M., 141 N.J. 434, 453 (1995) (discussing Family Part's authority "to recall cases previously decided and to modify dispositions previously ordered"). In September 2008, after Kyle had served six months of his custodial sentence, the court conducted a recall hearing and ordered his release and placement

4

in the Juvenile Intensive Supervision Program (JISP).[3] However, Kyle was noncompliant and failed to complete JISP. After being charged with violation of JISP, his participation was terminated on March 3, 2009. Noting Kyle's approaching eighteenth birthday, the Family Part court dismissed the JISP violation and discharged the few months remaining on Kyle's sentence while cautioning Kyle to remain offense free. Less than two months later, Kyle committed the act of delinquency resulting in his current sentence and this appeal.

In respect of the challenged sentence, the disposition court held, after taking Kyle's prior adjudication on the second-degree aggravated assault charge and the present adjudication into consideration, that as a matter of law Kyle was extended-term eligible under N.J.S.A. 2A:4A-44(d)(3). The court sentenced Kyle to the maximum permissible term of three

_____

[3] JISP is a statewide dispositional alternative to juvenile detention that exposes offenders to intensive rehabilitation techniques regarded as "more stringent than juvenile probation, but less rigid than detention or commitment." The Juvenile Intensive Supervision Program, (JISP), New Jersey Courts, http://www.judiciary.state.nj.us/probsup/jisp_intro.htm (last visited Jan. 31, 2014). "JISP works cooperatively with the Family Court and community agencies to provide support services to assist participants and their families. These vital relationships help to connect participants with necessary education and health services that will enhance their potential for success." Ibid. The program includes the monitoring of required school or work attendance, community service, curfew requirements, substance abuse or mental health treatment, and victim restitution. Ibid.

years at a juvenile detention facility pursuant to N.J.S.A.
2A:4A-44(d)(1) with an additional two-year extended term
pursuant to N.J.S.A. 2A:4A-44(d)(3).

Kyle appealed his sentence and the Appellate Division
affirmed.  In re K.O., 424 N.J. Super. 555, 566 (App. Div.
2012).  With respect to the statutory analysis, the panel
compared section 4A-44(d)(3)'s language to that contained in the
other section authorizing an extended-term sentence for juvenile
adjudications, N.J.S.A. 2A:4A-44(d)(4).[4]  The panel interpreted
section 4A-44(d)(3) as permitting the imposition of an extended
term whenever there are two separate occasions of a first- or
second-degree offense, one of which involved a period of
incarceration.  Noting that section 4A-44(d)(3) does not refer
to previous or prior offenses, the panel rejected the argument

---

[4] N.J.S.A. 2A:4A-44(d)(4) provides that

> [u]pon application by the prosecutor, when a juvenile is before the court at one time for disposition of three or more unrelated offenses which, if committed by an adult, would constitute crimes of the first, second or third degree and which are not part of the same transaction, the court may sentence the juvenile to an extended term of incarceration not to exceed the maximum of the permissible term for the most serious offense for which the juvenile has been adjudicated plus two additional years.
>
> [N.J.S.A. 2A:4A-44(d)(4).]

6

that section 4A-44(d)(3) requires two previous adjudications in order for a juvenile to be extended-term eligible for a present adjudication.  Applying that approach to extended-term eligibility under section 4A-44(d)(3), the panel found that Kyle qualified and that the trial court committed no abuse of discretion in imposing an extended-term sentence in Kyle's case.

Kyle filed a petition for certification challenging his eligibility for an extended-term sentence under section 4A-44(d)(3).  On November 9, 2012, we granted certification in this matter.  212 N.J. 460 (2012).

II.

A.

Kyle contends on appeal that he does not meet the requirements for an extended-term sentence set forth in N.J.S.A. 2A:4A-44(d)(3) because he did not have two prior delinquency adjudications for conduct equivalent to first- or second-degree offenses at the time of the disposition hearing.  Kyle argues that a juvenile's current offense should not qualify as one of the two predicate offenses required to impose an extended term under section 4A-44(d)(3).

He supports this contention by relying on the section's plain language and legislative history, which, he contends, express a legislative intent "to punish repetitive offenders." In advancing a plain language argument, Kyle contends that the

7

use of past tense in section 4A-44(d)(3) implies a requirement that the qualifying offenses must have been prior offenses. He claims that the Appellate Division placed undue weight on the absence of the terms "prior" or "previous" within section 4A-44(d)(3). He further argues that, when section 4A-44(d)(3) is read in concert with section 4A-44(d)(4), it becomes clear that the Legislature did not intend for the instant offense to qualify as one of the two predicate offenses required under section 4A-44(d)(3). In the alternative, Kyle argues that the rule of lenity should apply if the Court finds ambiguity in the language of section 4A-44(d)(3).

### B.

The State argues that section 4A-44(d)(3) should be read to allow for the imposition of an extended term so long as there are two separate qualifying offenses, inclusive of the instant offense. Thus, the State's interpretation would require only two separate delinquency proceedings. The State relies on the plain language of the statute, emphasizing the Legislature's use of "separate" instead of "prior" or "previous" when discussing qualifying offenses. The State also finds support for its construction of section 4A-44(d)(3) in the statute's legislative history. The State contends that Kyle's arguments regarding the Legislature's use of past tense and the applicability of the rule of lenity are without merit.

8

III.

Because statutory interpretation involves the examination of legal issues, it is considered a question of law. McGovern v. Rutgers, 211 N.J. 94, 107-08 (2012). Accordingly, a de novo standard of review applies on appeal. Ibid.; see also State v. Gandhi, 201 N.J. 161, 176 (2010).

In statutory interpretation, a court's role "is to determine and effectuate the Legislature's intent." Allen v. V & A Bros., 208 N.J. 114, 127 (2011). The first step toward that end is to consider the plain language of the statute. Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 166 (2013) (quoting Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 264 (2008)). Statutory language should be given its ordinary meaning and be construed in a common-sense manner. N.J. Dep't of Envtl. Prot. v. Huber, 213 N.J. 338, 365 (2013); N.E.R.I. Corp. v. N.J. Highway Auth., 147 N.J. 223, 236 (1996). Further, when construing the Legislature's words, every effort should be made to avoid rendering any part of the statute superfluous. See Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (noting "bedrock assumption" that Legislature did not use meaningless or unnecessary language).

In sum, our overriding goal is to discern and effectuate the legislative intent underlying the statutory provision at issue. N.J. Dep't of Children & Families, Div. of Youth &

Family Servs. v. A.L., 213 N.J. 1, 20 (2013). Our role is not to "rewrite a plainly-written enactment of the Legislature []or [to] presume that the Legislature intended something other than that expressed by way of the plain language." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (first alteration in original) (internal quotation marks omitted). Where the language is unclear or ambiguous, or if the Legislature's intention is otherwise uncertain, resort may be had to extrinsic aids to "assist us in our understanding of the Legislature's will." Pizzullo, supra, 196 N.J. at 264; see also Roberts v. State, Div. of State Police, 191 N.J. 516, 521 (2007); DiProspero, supra, 183 N.J. at 492.

IV.

In the statutory construction question at issue, we consider a sentencing provision in the legislative scheme governing the dispensing of juvenile justice. The rehabilitation of juvenile offenders is the goal of the juvenile justice system. See State ex rel. C.V., 201 N.J. 281, 295 (2010); State ex rel. J.D.H., 171 N.J. 475, 483 (2002). The Code balances its intention to act in the best interests of the juvenile and to promote his or her rehabilitation with the need to protect the public welfare. See N.J.S.A. 2A:4A-21 (enumerating Code's purposes). While rehabilitation of juveniles has historically been at the heart of juvenile

10

justice, see In re Gault, 387 U.S. 1, 15-16, 87 S. Ct. 1428, 1437, 18 L. Ed. 2d 527, 539 (1967), modern experiences with serious juvenile crimes have elevated the importance of punitive sanctions in juvenile dispositions, see State v. Presha, 163 N.J. 304, 314 (2000) (noting that "punishment has now joined rehabilitation as a component of the State's core mission with respect to juvenile offenders").  This Court has noted that the Legislature underscored that the Code's sanctions are not just for the purpose of accomplishing rehabilitation but are also "designed to promote accountability and protect the public." State v. Franklin, 175 N.J. 456, 466 (2003) (quoting language added in 1995 to statement of Code's purposes in N.J.S.A. 2A:4A-21(b)).  In this matter, we must construe a clearly punitive sanction available under the Code -- one included in the Code when it was adopted in 1982 that enables the Family Part court to impose an extended-term sentence on a juvenile.

N.J.S.A. 2A:4A-44(d)(3) bears repeating in full:

> Upon application by the prosecutor, the court may sentence a juvenile who has been convicted of a crime of the first, second, or third degree if committed by an adult, to an extended term of incarceration beyond the maximum set forth in [N.J.S.A. 2A:4A-44(d)(1)], if it finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility.  The extended term shall not

11

> exceed five additional years for an act
> which would constitute murder and shall not
> exceed two additional years for all other
> crimes of the first degree or second degree,
> if committed by an adult, and one additional
> year for a crime of the third degree, if
> committed by an adult.
>
> [N.J.S.A. 2A:4A-44(d)(3).]

Our duty to discern and implement the legislative intent underlying this authorization for an extended-term sentence compels us to seek that intent from the words used in the statute. See Norfolk, supra, 215 N.J. at 166. From a plain language reading, the statute addresses the disposition stage of the offense for which the juvenile is being sentenced. The statute requires the filing of an application for an extended-term sentence by the prosecutor after the juvenile has been adjudged to have committed what would have been the equivalent of a first-, second-, or third-degree crime if committed by an adult. Thus, the statute envisions that the extended-term application is to be made after the adjudication is complete and while the disposition of the present offense is taking place. The Legislature clearly has demarked the "present" offense in its discussion in this part of the statute.

The plain language of the statute then requires certain findings by the disposition court. An extended term may be imposed "if [the court] finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses

which, if committed by an adult, would constitute a crime of the first or second degree, and was previously committed to an adult or juvenile facility." In this part of the statute, the Legislature has moved to the past tense, and not just for the past adjudication but also for the additional requirement that at least one such adjudication resulted in commitment to a juvenile or adult facility. The words refer to someone who "was adjudicated" and "was previously committed" on at least one such occasion to a facility.

The rules of statutory construction require deference to the words chosen by the Legislature. Statutory language is entitled to its ordinary meaning and to be given a common-sense construction. See Huber, supra, 213 N.J. at 365; Smith v. Fireworks by Girone, Inc., 180 N.J. 199, 216 (2004). In following that precept, we give great weight to the difference in verb tenses used by the Legislature in this statute. The Legislature first used the "has been convicted" language when referring to the present offense for which the court is considering the prosecutor's application for an extended term. The Legislature then switched to past tense when referring to the two findings from the person's past that the court must make in order to declare the person eligible for an extended term. As to the latter, the Legislature used past tense two times, requiring that the person (1) "was adjudicated" delinquent on at

13

least two separate occasions for offenses of a certain grade if committed by an adult, and (2) "was previously committed" to an adult or juvenile facility. Both conditions clearly are from the person's past and do not naturally suggest the inclusion of the present adjudication before the disposition court, especially when the Legislature had just used a different tense to describe the instant offense. We glean from this that the Legislature intentionally went out of its way to differentiate between the instant offense and the qualifying predicate offenses. That interpretation is a common-sense application of the section's language and it advances a discernible public policy. The Legislature wanted to address individuals who have not learned from their past serious adjudications that have included time spent incarcerated pursuant to a previously imposed order of commitment.

We are unpersuaded that the failure to include the word "previously" twice when identifying the two required findings compels a plain language reading that the present adjudication may count as one of two separate offenses. Indeed, in considering this argument made on the basis of an omitted word, we note that the Legislature did not use that same language construction in the companion section of 4A-44(d)(4) when it expressly dealt with the imposition of an extended-term sentence in sentencing for multiple unrelated crimes before the court in

14

a single sentencing proceeding.  It is a guiding principle in achieving the goal of fulfilling the legislative intent underlying a statute that a provision be considered in light of its surrounding statutory provisions.  Huber, supra, 213 N.J. at 365 (stating we must examine statutory "language sensibly, in the context of the overall scheme in which the Legislature intended the provision to operate").

In section 4A-44(d)(4), when addressing a juvenile who has engaged in a spree of qualifying offenses, the Legislature has authorized the imposition of an extended-term sentence on the basis of the present offenses by using language that clearly and unambiguously captures the instant offenses with which the disposition court is dealing.  Moreover, section 4A-44(d)(4) refers to those offenses as ones for which the juvenile "has been adjudicated," just as section 4A-44(d)(3) does when describing the instant offense.

The language of section 4A-44(d)(3), in referring in past tense to the previous separate adjudications that must provide the predicate for an extended term to be imposed on the instant offense, points to a natural reading that does not favor the State's position or the extended-term sentence imposed on Kyle.  Our goal is to effectuate legislative intent based on our best assessment of the words used by the Legislature.  We have done that.  To the extent one could argue that there is some

15

ambiguity in the text of the section, we may resort to legislative history. Here, legislative history is silent on the specific issue before us. Accepted forms of legislative history such as sponsor or committee statements addressing the question presented about section 4A-44(d)(3) do not exist. To the extent that the State points to subsequent study commissions that have examined progress made in combatting juvenile crime and dispensing juvenile justice, those reports are not indicative of legislative intent. They do not represent contemporaneous expressions of intent by the Legislature that enacted or amended the legislation in question. We may not consider them of value in ascertaining legislative intent.[5] See State v. Trump Hotels & Casino Resorts, 160 N.J. 505, 550-51 (1999) (Handler, J., dissenting) (asserting statements made after enactment of constitutional amendment not part of legislative history); see also Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 117, 100 S. Ct. 2051, 2061, 64 L. Ed. 2d 766, 778 (1980) (noting "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one").

---

[5] Even if we were to consider the subsequent studies as indicative of legislative intent, we do not find them to be supportive of the State's interpretation of section 4A-44(d)(3) in this instance.

16

Further, to the extent that section 4A-44(d)(3) is not a model of perfect clarity, because it is a juvenile justice statute involving among the most severe sanctions that can be imposed on a juvenile, principles of lenity deserve consideration. A court may apply the doctrine of lenity when construing an ambiguous criminal statute. State v. Rangel, 213 N.J. 500, 515 (2013). "That doctrine 'holds that when interpreting a criminal statute, ambiguities that cannot be resolved by either the statute's text or extrinsic aids must be resolved in favor of the defendant.'" Ibid. (quoting State v. Gelman, 195 N.J. 475, 482 (2008)). The doctrine is founded on two guiding principles. The first is the important concept that a criminal defendant is entitled to "fair warning . . . of what the law intends to do if a certain line is passed." Gelman, supra, 195 N.J. at 482 (omission in original) (quoting United States v. Bass, 404 U.S. 336, 348, 92 S. Ct. 515, 522, 30 L. Ed. 2d 488, 496 (1971)) (internal quotation marks omitted). The second guiding principle is the notion that the Legislature, and not the courts, should define the contours of criminal activity. That principle is founded upon society's "instinctive distaste against men [and women] languishing in prison unless the lawmaker has clearly said they should." Id. at 482-83 (alteration in original) (quoting Bass, supra, 404 U.S. at 348,

17

92 <u>S. Ct.</u> at 523, 30 <u>L. Ed.</u> 2d at 497) (internal quotation marks omitted).

Here, in interpreting an aspect of the Code affecting the dispensing of justice to juveniles, where rehabilitation concerns are at their highest in the criminal justice sphere, we decline to give this statute its harshest possible reading. Notwithstanding the important role that punishment now plays in the juvenile justice system, <u>see</u> <u>Presha</u>, <u>supra</u>, 163 <u>N.J.</u> at 314, principles of statutory construction still govern, including the principle of lenity when construing a criminal statute. To the extent that reasonable people can differ on whether the Legislature indeed intended to allow for an extended-term sentence for individuals like Kyle, who have only one previous separate predicate offense, not including the offense for which they are being sentenced, we conclude that the more lenient construction of the statute should pertain.

We therefore hold that <u>N.J.S.A.</u> 2A:4A-44(d)(3) requires two separate previous predicate adjudications, including one that resulted in incarceration in a juvenile or adult facility, exclusive of the adjudication for which the disposition court is sentencing the juvenile. The imposition of an extended term for Kyle transgresses that interpretation of the statute. We therefore reverse the extended-term sentence imposed.

18

V.

The judgment of the Appellate Division is reversed.

JUSTICES ALBIN and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE LaVECCHIA's opinion. CHIEF JUSTICE RABNER filed a separate, concurring opinion.

STATE OF NEW JERSEY
IN THE INTEREST OF
K.O., a minor.

CHIEF JUSTICE RABNER, concurring.

Reasonable people can disagree about whether N.J.S.A. 2A:4A-44(d)(3) requires one or two separate, prior juvenile adjudications before an extended term of incarceration can be imposed. The statute provides as follows:

> Upon application by the prosecutor, the court may sentence a juvenile who has been convicted of a crime of the first, second, or third degree if committed by an adult, to an extended term of incarceration beyond the maximum set forth in paragraph (1) of this subsection, if it finds that the juvenile was adjudged delinquent on at least two separate occasions, for offenses which, if committed by an adult, would constitute a crime of the first or second degree, and was *previously* committed to an adult or juvenile facility.
>
> [N.J.S.A. 2A:4A-44(d)(3) (emphases added).]

The majority presents a strong case as to why two prior predicates are required. It focuses on the different verb tenses in the statute, which are underscored above. Ante at __-__ (slip op. at 13-15).

1

Another persuasive reading of the statute focuses on the word "previously." The Legislature inserted the term only once: to establish that a juvenile must have been "previously" incarcerated. The word does not appear in the clause that states "the juvenile was adjudged delinquent on at least two separate occasions." Thus, the Legislature required two juvenile adjudications but did not say both must have occurred "previously." As the Appellate Division noted, "the Legislature could easily have" said so had it meant to. In re K.O., 424 N.J. Super. 555, 561 (App. Div. 2012). Instead, it omitted the very limiting term it used later in the same section. For this and other reasons, the appellate panel concluded that the pending offense may count as a predicate for an extended term. Id. at 564.

Because both interpretations of this criminal statute are reasonable, and because the legislative history does not resolve this dispute, the doctrine of lenity applies. See State v. Rangel, 213 N.J. 500, 515 (2013); State v. Shelley, 205 N.J. 320, 324 (2011). As a result, the ambiguity in the statute should be resolved in defendant's favor. Rangel, supra, 213 N.J. at 515 (citing State v. Gelman, 195 N.J. 475, 482 (2008)).

I agree with the majority's discussion of the doctrine of lenity. See ante at __-__ (slip op. at 17-18). My difference with the majority is slight. It concludes that the

2

statutory language is plain and considers the rule of lenity to the extent one might find the law ambiguous.  <u>Ibid.</u>  Because I do not believe the language of the statute leads to one clear interpretation, I turn directly to the rule of lenity in the absence of definitive legislative history.

For the above reasons, I concur in the result the majority reaches and would reverse the judgment of the Appellate Division.

# SUPREME COURT OF NEW JERSEY

NO.    A-28    SEPTEMBER TERM 2012

ON CERTIFICATION TO    Appellate Division, Superior Court

STATE OF NEW JERSEY
IN THE INTEREST OF
K.O., a minor.

DECIDED        February 24, 2014

Chief Justice Rabner    PRESIDING

OPINION BY        Justice LaVecchia

CONCURRING OPINION BY        Chief Justice Rabner

DISSENTING OPINION BY

| CHECKLIST | REVERSE | CONCUR |
|---|---|---|
| CHIEF JUSTICE RABNER | (X) | X |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1