RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4841-14T1

STATE OF NEW JERSEY
IN THE INTEREST OF J.H.,
A JUVENILE.
____________________________

 Submitted April 26, 2017 – Decided September 8, 2017

 Before Judges Fuentes and Gooden Brown.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part, Union
 County, Docket No. FJ-20-0651-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Janet A. Allegro, Designated
 Counsel, on the briefs).

 Grace H. Park, Acting Union County Prosecutor,
 attorney for respondent (Milton S. Leibowitz,
 Special Deputy Attorney General/Acting
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM

 J.H., a juvenile, appeals from an adjudication of delinquency

entered by the Family Part following trial on a complaint alleging

acts of delinquency that, if committed by an adult, would

constitute third-degree unlawful possession of a weapon (rifle or
shotgun), N.J.S.A. 2C:39-5(c) (count one);1 second-degree unlawful

possession of a weapon, (assault firearm), N.J.S.A. 2C:39-5(f)

(count two); fourth-degree possession of prohibited weapons and

devices (hollow nose bullets), N.J.S.A. 2C:39-3(f) (count three);

and fourth-degree possession of prohibited weapons and devices (a

large capacity ammunition magazine), N.J.S.A. 2C:39-3(j) (count

five).2 Following the bench trial, the court entered a

dispositional order committing J.H. to the custody of the Juvenile

Justice Commission (JJC) to be incarcerated at the Training School

for Boys for an aggregate term of thirty months. We affirm.

 The record shows that on the afternoon of January 16, 2015,

J.H. was the front seat passenger in an Audi bearing New York

license plates that crashed into another vehicle following a high-

speed police chase. After the crash, the Audi came to a complete

stop in the middle of the street at the intersection of Watchung

Avenue and East 6th Street in Plainfield, and its airbags deployed

from the impact. The four occupants of the Audi immediately exited

1
 Prior to trial, the count was amended to correct the statutory
citation, the degree of the offense and the weapon allegedly
possessed.
2
 J.H. was also charged in count four of the complaint with
obstructing the administration of law, a disorderly persons
offense, N.J.S.A. 2C:29-1B. However, prior to trial, J.H. entered
an admission to the charge and does not challenge the adjudication
of delinquency on that charge or the concurrent six-month
disposition in this appeal.

 2 A-4841-14T1
the vehicle and fled on foot. J.H. was apprehended trying to

climb over a fence and provided a false name to police. The

firearms and ammunition were found in plain view in the front and

back seat of the Audi.

 At trial, the evidence presented by the State consisted of

the testimony of Plainfield Police Officers Ronald James, William

Guy, Jesse McNeil, and Sergeant Ronald Fusco, as well as Lieutenant

Michael Sanford who was qualified as an expert in forensic analysis

and ballistics. J.H. testified on his own behalf.

 James identified J.H. as the juvenile who was in the front

passenger seat of the Audi. He chased J.H. for approximately 200

yards, through city streets and local yards, until he apprehended

him climbing a fence. James arrested J.H. who stated that he was

sixteen-years-old and provided the false name "John King." Guy

corroborated James' account that J.H. was the front seat passenger

from Guy's "clear view of him." While in pursuit of the Audi's

fleeing occupants, McNeill observed two weapons in plain view as

he passed the Audi, prompting him to stop to secure the vehicle.

On the floor of the rear passenger seat, he observed a large

assault weapon with an affixed ammunition magazine. McNeill

testified that the assault weapon was so large that it could not

fit under the car seat. On the front seat passenger side, wedged

between the seat cushion and the door, was a large rifle protruding

 3 A-4841-14T1
in plain view. McNeill testified that he did not observe any

carrying cases or containers for the firearms in the Audi.

 Fusco, who arrived at the scene after the collision, confirmed

the location of both firearms in the Audi. The driver, later

identified as Tasheem Punter, and the rear passenger side occupant,

later identified as Dave Fulford, both adults, were arrested. The

fourth occupant, who purportedly sat in the rear driver side seat,

escaped apprehension. Fulford stated that the "chopper,"

referring to the assault weapon, was his. Fusco secured the

weapons, which were later stored at police headquarters.

 Sanford tested both weapons and determined that they were

both operable. He testified that the rifle was a semi-automatic

SKS rifle loaded with ten 7.62 by 39mm hollow point bullets.

According to Sanford, the assault weapon was a Cobray Model M-11

assault weapon with a detachable large capacity magazine which was

loaded with fourteen 9mm hollow point bullets and one "full metal

jacket cartridge."

 J.H. testified that on the date in question, he was living

in Newburgh, New York, and accompanied his friend's older brother,

Fulford, and another acquaintance, Punter, in Punter's Audi from

Newburgh to meet up with Punter's family in Plainfield. According

to J.H., Punter was the driver, Fulford sat in the rear driver's

side seat and J.H. sat in the rear passenger side seat. J.H.

 4 A-4841-14T1
testified that no one sat in the front passenger seat during the

ride to Plainfield.

 According to J.H., he dozed off for about thirty minutes

during, what he approximated was, a two-hour ride. J.H. testified

that while enroute to Plainfield, they stopped in Irvington to

pick up one of Punter's friends, whom he identified as Rock.

Thereafter, according to J.H., they drove to and around Plainfield

and smoked marijuana in the car. J.H. testified that although he

remained in the car for the entire trip, he did not observe Rock

carrying anything when he entered the car, was not aware of any

weapons found in the car, and could not explain their presence.

 Following trial, Judge Robert Kirsch issued his written

findings of fact and conclusions of law. He accorded great weight

to the testimony of the four officers, finding them to be credible

witnesses. Judge Kirsch stated that "[e]ach testified clearly and

professionally, and exhibited excellent eye contact with the

questioner[,]" acknowledging "when they could not recall in

response to a posed question." Judge Kirsch found that "[n]one

of the officers appeared to have an animus or even familiarity

with J.H.," and "[t]here appeared to be no testimonial

embellishments[.]" Judge Kirsch noted "importantly, the officers

corroborated each other in multiple material respects." Judge

 5 A-4841-14T1
Kirsch found the expert testimony of Lieutenant Sanford "equally

persuasive" and that he was "a most credible witness."

 On the other hand, Judge Kirsch found J.H.'s testimony

"incredible[,]" "self-serving and utterly implausible" and

"contrary to the corroborated evidence at trial[.]" He described

J.H.'s testimony as "patently unreasonable[,]" defying "common

sense and common experience." According to Judge Kirsch,

 If [J.H.] were seated in the front passenger
 seat, which the court finds based on the
 credible testimony of law enforcement, he
 would have necessarily been resting on the
 approximately 33 inch semi-automatic rifle,
 loaded with hollow nose bullets. If he were
 in the back driver's side seat, as he claimed,
 he would be but a few feet from the assault
 weapon, likewise loaded with hollow nose
 bullets, lying on the floorboard in the same
 rear compartment on the passenger's side,
 fully exposed, openly and notoriously, and
 within his easy grasp.

 Judge Kirsch concluded that the State proved beyond a

reasonable doubt that J.H. committed the charged offenses.

Preliminarily, the judge recounted the elements of each offense

as well as the principles of constructive and joint possession

articulated in State v. Morrison, 188 N.J. 2, 14-15 (2006) and

State v. Mendez, 175 N.J. 201, 212 (2002). As to the weapons

possession charges, the judge cited State v. Bolton, 230 N.J.

Super. 476, 480 (App. Div. 1989) to support his reliance on the

permissive inference permitting the factfinder to infer possession

 6 A-4841-14T1
of the weapons by all occupants when the vehicle has more than one

occupant. N.J.S.A. 2C:39-2. Applying his factual findings to the

applicable legal principles, the judge reasoned:

 J.H.'s position in the car necessitated
 that he be aware of, and likely in physical
 contact with, one of the weapons. In such a
 situation, wherein two rather large firearms
 are contained in a modestly sized vehicle and
 one of them rested by necessity against J.H.'s
 leg, the court finds that he was more than
 "merely present" in the vehicle with the
 weapons. The court draws the reasonable
 inference that if J.H. was aware of and in
 contact with the loaded rifle. . . , as
 necessitated by his position in the car, that
 he would have no knowledge of the similarly
 loaded assault weapon lying directly behind
 him on the floor of the backseat is entirely
 implausible. Furthermore, . . . [t]he court
 considers J.H.'s evasive actions as
 circumstantial evidence of his consciousness
 of guilt, bolstering the inference that he
 possessed the weapons. . . .

 The court also draws a reasonable
 inference and finds that J.H. did not have a
 permit to bear the rifle . . . . J.H. did not
 present a valid firearms purchaser
 identification card, and in fact was too young
 to have obtained one at the time of the
 offense. . . . Similarly, the court finds
 that the assault weapon . . . could not have
 been properly licensed as to J.H. in
 accordance with N.J.S.A. 2C:58–5(b) for the
 same reason that J.H. could not have obtained
 a valid firearms purchaser identification
 card. Finally, Lieutenant Sanford credibly
 testified as to the testing he performed that
 demonstrated both weapons were operable.

 7 A-4841-14T1
 Regarding the hollow nose bullets, which the court described

"as evident to even the uneducated observer as they display a

visible hole[,]" and the "detachable, and quite visible, high

capacity magazine[,]" the judge noted:

 J.H. was seated in the Audi within inches of
 the SKS rifle loaded with hollow nose bullets,
 and directly behind him in the vehicle the
 Cobray Model M-11 assault firearm, fitted with
 a [high capacity] magazine and likewise loaded
 with hollow nose bullets. . . . The court finds
 it highly implausible that he could be in
 possession of two loaded firearms, seated
 within inches of one and feet of another, for
 several hours, and be unaware that they were
 loaded. . . . The court thus finds that J.H.
 was in knowing possession of both hollow nose
 bullets and a high capacity magazine.

 On May 1, 2015, Judge Kirsch conducted a dispositional

hearing. After reviewing the Pre-Disposition Report, the judge

found the following aggravating factors: the character and

attitude of the juvenile indicate he is likely to commit another

offense, N.J.S.A. 2A:4A-44(a)(1)(c); the juvenile's prior record

and seriousness of prior adjudications of delinquency, N.J.S.A.

2A:4A-44(a)(1)(d); the need for deterring the juvenile and others

from violating the law, N.J.S.A. 2A:4A-44(a)(1)(g); the fact that

the juvenile on two separate occasions was adjudged a delinquent

on the basis of acts which if committed by an adult would

constitute crimes, N.J.S.A. 2A:4A-44(a)(1)((i); the impact of the

offense on the community, N.J.S.A. 2A:4A-44(a)(1)(k); and the

 8 A-4841-14T1
threat to the safety of the public or any individual posed by the

juvenile, N.J.S.A. 2A:4A-44(a)(1)(l). In mitigation, the judge

found that the juvenile would participate in a program of community

service, N.J.S.A. 2A:4A-44(a)(2)(g).

 Acknowledging that J.H. was seventeen-years-old and a

resident of New York, the judge noted J.H.'s recent prior New York

adjudication for "a very serious aggravated assault" during which

J.H. shot "another individual in the face repeatedly" and was "put

on probation[.]" The judge also noted that given the nature of

the weapons in this case and the fact that they were both loaded,

"[t]he only purpose of these incredibly lethal weapons was to

kill." The judge observed that possession of loaded weapons was

not a victimless crime but rather crimes "awaiting a victim."

Based on J.H.'s "prior assaultive adjudication . . . and in short

order, his possession of these two loaded weapons," which the

court characterized as "out of control dangerous behavior that

could result in his death or somebody else's[,]" the judge

concluded that "the aggravating factors qualitatively and

quantitatively substantially outweigh" the sole mitigating factor.

This appeal followed.

 On appeal, J.H. raises the following arguments for our

consideration:

 9 A-4841-14T1
 POINT I

 THE COURT'S FINDING OF DELINQUENCY WAS NOT
 SUPPORTED BY SUFFICIENT CREDIBLE EVIDENCE IN
 THE RECORD AND MUST BE REVERSED.

 A. THE COURT ERRED IN FINDING J.H.
 HAD CONSTRUCTIVE POSSESSION OF THE
 WEAPONS.

 B. THE COURT ERRED IN FINDING THAT
 J.H.'S DEPARTURE FROM THE ACCIDENT
 SCENE CONSTITUTED FLIGHT.

 C. THE COURT ERRED IN FINDING THAT
 J.H. CONSTRUCTIVELY POSSESSED THE
 AMMUNITION.

 POINT II

 THE SENTENCE IMPOSED BY THE COURT WAS
 EXCESSIVE.

 Our scope of review in juvenile delinquency cases is the same

as the one applicable to a court's decision after a bench trial.

State ex rel. L.E.W., 239 N.J. Super. 65, 76 (App. Div.), certif.

denied, 122 N.J. 144 (1990). In order to find a violation, the

court must conclude that the State proved each element of the

offense charged beyond a reasonable doubt. State ex rel J.G., 151

N.J. 565, 593-94 (1997). We are bound by the findings of the

court that are supported by adequate, substantial, and credible

evidence. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,

65 N.J. 474, 484 (1974). We do not engage in an independent

assessment of the evidence as if "[we] were the court of first

 10 A-4841-14T1
instance." State v. Johnson, 42 N.J. 146, 161 (1964). Rather,

we give special deference to the trial judge's findings,

particularly those that are substantially influenced by the

judge's opportunity to observe the witnesses directly. Johnson,

supra, 42 N.J. at 162. However, we need not defer to the trial

judge's interpretation of the law. State v. Brown, 118 N.J. 595,

604 (1990).

 J.H. argues that "[t]he trial court's decision finding J.H.

guilty of all of the charges was not supported by sufficient,

credible evidence, and therefore, the court's findings and legal

conclusions should be afforded no deference." J.H. asserts that

"the evidence was insufficient to show that J.H. constructively

possessed the weapons and hollow point bullets recovered from the

vehicle" because "[t]here did not exist scientific, circumstantial

or evidence by inference" to establish constructive possession

beyond a reasonable doubt. Further, J.H. asserts that his

departure from the scene "was not sufficient evidence of

consciousness of guilt." In addition, J.H. contends that his

sentence "was unduly excessive" and "[t]he court clearly erred in

only finding one mitigating factor[.]" We affirm substantially

for the reasons set forth in Judge Kirsch's thorough and thoughtful

written decision of April 23, 2015, and his oral findings during

 11 A-4841-14T1
the May 1, 2015 dispositional hearing. We add only the following

brief comments.

 Constructive possession arises out of an individual's conduct

with regard to the subject item. State v. Schmidt, 110 N.J. 258,

268 (1988). Current immediate control and dominion are not

required; rather, the State must prove beyond a reasonable doubt

that the juvenile had the capacity, by direct or indirect means,

to gain almost immediate physical control, and the ability to

affect the item during the time in question. Id. at 270. In

Schmidt, the Court listed clear applications of constructive

possession in its opinion, including an apropos example wherein

the Court found that the front seat passenger of a vehicle

constructively possessed a flare gun on the car dashboard. Id.

at 271 (citations omitted).

 A determination of constructive possession is fact-sensitive

and requires careful scrutiny by a court. See State v. Palacio,

111 N.J. 543 (1988). Here, the credible evidence adduced at trial

demonstrated beyond a reasonable doubt that J.H. had the capacity,

by direct means, to gain almost immediate physical control of both

weapons, and the ability to affect same during the time in

question. While mere presence alone cannot serve as grounds for

inferring constructive possession, State v. Brown, 80 N.J. 587,

593 (1979), there is far more than mere presence in this case,

 12 A-4841-14T1
including J.H.'s proximity to the firearms, the size of the

firearms compared to the size of the Audi, and J.H.'s flight as

consciousness of guilt. These factors supported Judge Kirsch's

rejection of J.H.'s argument that the absence of scientific

evidence connecting him to the firearms was dispositive.

Furthermore, under N.J.S.A. 2C:39-2, there is a statutory

presumption that a firearm found in a vehicle is in the possession

of all of the occupants, except under delineated exceptions, none

of which apply in this case.

 As to the disposition, we note that "[t]he rehabilitation of

juvenile offenders is the goal of the juvenile justice system."

State in Interest of K.O., 217 N.J. 83, 92 (2014). The Juvenile

Code "balances its intention to act in the best interests of the

juvenile and to promote his or her rehabilitation with the need

to protect the public welfare." Ibid. "While rehabilitation of

juveniles has historically been at the heart of juvenile justice,

modern experiences with serious juvenile crimes have elevated the

importance of punitive sanctions in juvenile dispositions." Ibid.

(citations omitted). In this regard, our Supreme Court has noted

that "the Legislature underscored that the Code's sanctions are

not just for the purpose of accomplishing rehabilitation but are

also designed to promote accountability and protect the public."

Ibid. (citation omitted). The judge's decision that "the

 13 A-4841-14T1
aggravating factors qualitatively and quantitatively substantially

outweigh[ed]" the sole mitigating factor finds ample support in

the record and we discern no basis upon which to disturb his

decision.

 Affirmed.

 14 A-4841-14T1