48 A.3d 419

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
EDWARD DUPREY, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 21, 2011—Decided August 1, 2012.

Before Judges CUFF, WAUGH, and ST. JOHN.

*Jane Deaterly Plaisted,* Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for appellant (*Carolyn A. Murray,* Acting Essex County Prosecutor, attorney; *Ms. Plaisted,* on the briefs).

*Bette R. Grayson* argued the cause for respondent (*Grayson and Associates, L.L.C.,* attorneys; *Ms. Grayson* and *Elena K. Weitz,* on the briefs).

*Jeffrey S. Chiesa,* Attorney General, amicus curiae (*Carol M. Henderson,* Assistant Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

WAUGH, J.A.D.

This case requires us to determine whether testimony given by the plaintiff or defendant during the trial of a domestic violence matter can be used for the purposes of cross-examination in a related criminal trial, despite the language of *N.J.S.A.* 2C:25–29(a) that "testimony given by the plaintiff or defendant in the domestic

violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant." We hold that such testimony can be used for the limited purpose of cross-examination in a manner consistent with this opinion.

I.

We briefly outline the factual and procedural background as reflected in the record on appeal.

On May 8, 2010, defendant Edward Duprey and C.G., to whom we refer by the pseudonym Smith, had an argument in the home they owned together in Newark. On May 11, Smith sought and received a temporary restraining order (TRO) pursuant to the Prevention of Domestic Violence Act of 1991 (DV Act), *N.J.S.A.* 2C:25–17 to –35. Smith's application for the TRO was premised on her allegation that Duprey had threatened and assaulted her during the argument.[1]

On the adjourned return date of the TRO, June 10, 2010, both parties testified before the Family Part judge, as did a witness produced by Smith. After hearing the testimony and summations, the judge concluded that Smith had not met her burden of proof. He dismissed the TRO and her complaint.

On September 16, 2010, Duprey was indicted and charged with third-degree terroristic threats, contrary to *N.J.S.A.* 2C:12–3(b) (count one); fourth-degree aggravated assault, contrary to *N.J.S.A.* 2C:12–1(b)(4) (count two); and second-degree possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39–4 (count three), all arising out of the events that underlay the domestic violence matter.

In February 2011, Duprey moved for dismissal of the indictment on the grounds of double jeopardy and collateral estoppel. In the

---

[1] Assault, as defined in *N.J.S.A.* 2C:12–1, and the making of terroristic threats, as defined in *N.J.S.A.* 2C:12–3, are acts of domestic violence pursuant to *N.J.S.A.* 2C:25–19(a)(2), (3).

alternative, he sought an order allowing him to use the transcript of the domestic violence trial as affirmative evidence and for purposes of impeachment at his criminal trial. The State opposed Duprey's motion.

The motion was argued on April 11, 2011, at which time the Criminal Part judge reserved decision. After hearing additional argument on May 9, the judge delivered an oral decision in which she denied the motion to dismiss the indictment, but held that testimony from the domestic violence trial could be used at trial. She entered an order to that effect the same day.

After additional argument on May 19, the judge modified her ruling. She denied that aspect of the motion that had sought permission to introduce the transcript of the testimony given by Smith and her witness as affirmative evidence, but held that the testimony could be used for impeachment purposes during cross-examination. The judge granted the State's oral motion for permission to use Duprey's testimony for impeachment purposes if he waived his Fifth Amendment right to remain silent and testified at trial. An amended order was entered the following day. We granted the State's motion for leave to appeal.

At oral argument, the State and defense counsel assured us that the only issue raised on this appeal is one of statutory construction and that no constitutional issues need be resolved to decide the appeal. After further review, we concluded that the issue before us also implicated a criminal defendant's rights under the Confrontation Clause of the Sixth Amendment. Consequently, we requested further briefing on that issue. We also invited the Attorney General to participate as amicus curiae, which invitation he has accepted.

II.

The State argues that the motion judge erred by ignoring the clear language of *N.J.S.A.* 2C:25–29(a) prohibiting the use of the testimony of either party to a domestic violence proceeding in a

related criminal proceeding.[2] The State further argues that the Confrontation Clause does not compel use of the complainant's statement for general impeachment, although such use may be permissible in cases in which there is a heightened need for impeachment with respect to a particularly relevant issue.

Duprey urges us to affirm the order on appeal, and maintains that the disposition of this appeal is not governed by the Confrontation Clause. Finally, the Attorney General urges affirmance, based upon the Confrontation Clause and well-settled law allowing the use of a defendant's prior statement for impeachment purposes if the defendant testifies at a criminal trial, even if the statement has been suppressed for constitutional reasons and cannot be used affirmatively by the State.

Because the only issues before us relate to legal conclusions, our review of the motion judge's decision is plenary. *State v. Harris,* 181 *N.J.* 391, 420–21, 859 *A.*2d 364 (2004), *cert. denied,* 545 *U.S.* 1145, 125 *S.Ct.* 2973, 162 *L.Ed.*2d 898 (2005); *State v. Goodman,* 415 *N.J.Super.* 210, 225, 1 *A.*3d 767 (App.Div.2010), *certif. denied,* 205 *N.J.* 78, 12 *A.*3d 210 (2011).

### A.

We start our analysis with the question of whether *N.J.S.A.* 2C:25–29(a) should be read to prohibit the use of testimony given by the complainant and defendant in an action brought under the DV Act at a subsequent criminal trial for the purposes of impeachment.

As we held in *State ex rel. K.O.,* 424 *N.J.Super.* 555, 559–60, 39 *A.*3d 202 (App.Div.2012),

[o]ur "overriding goal" in interpreting a statute is to "determine as best we can the intent of the Legislature, and to give effect to that intent." *State v. Hudson,* 209

---

[2] The State concedes that the testimony given by Smith's witness is not covered by the prohibition of *N.J.S.A.* 2C:25–29(a), and does not appeal that aspect of the May 20, 2011 order.

N.J. 513, 529 [39 *A.*3d 150] (2012) (citing *State v. Shelley*, 205 *N.J.* 320, 323 [15 *A.*3d 818] (2011); *DiProspero v. Penn*, 183 *N.J.* 477, 492 [874 *A.*2d 1039] (2005)).

We start with the language of the statute itself, which the Supreme Court has held is " 'the best indicator' " of the intent of the Legislature. *Ibid.* (quoting *State v. Gandhi*, 201 *N.J.* 161, 176 [989 *A.*2d 256] (2010)); *see also N.J.S.A.* 1:1–1 ("In the construction of the laws and statutes of this state, both civil and criminal, words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language.").

We will not go beyond the language of the statute if it "leads to a clearly understood result." *Hudson, supra*, 209 *N.J.* at 529, 39 *A.*3d 150 (citing *Shelley, supra*, 205 *N.J.* at 323, 15 *A.*3d 818). "[E]xtrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question;" they are only used if "the statutory language results in more than one reasonable interpretation." *Ibid.* (citing *Shelley, supra*, 205 *N.J.* at 323–24, 15 *A.*3d 818).

In pertinent part, *N.J.S.A.* 2C:25–29(a) provides as follows:

If a criminal complaint arising out of the same incident which is the subject matter of a complaint brought under [the DV Act] has been filed, testimony given by the plaintiff or defendant in the domestic violence matter shall not be used in the simultaneous or subsequent criminal proceeding against the defendant, other than domestic violence contempt matters and where it would otherwise be admissible hearsay under the rules of evidence that govern where a party is unavailable.

*N.J.S.A.* 2C:25–29(a) was enacted in 1991, as part of the DV Act, which replaced an earlier statute. The language at issue replaced a provision requiring that the attorney prosecuting any criminal matter arising out of the same events be given notice of all hearings concerning a pending DV complaint. *N.J.S.A.* 2C:25–13 (repealed). The purpose of the notice was to allow the prosecuting attorney "to be heard with respect to a stay of that proceeding pending disposition of the criminal proceeding." *Ibid.*

The present language was intended to facilitate "simultaneous or subsequent criminal proceedings" "unimpacted" by the DV action, except for a DV contempt action brought under *N.J.S.A.* 2C:25–30 and *N.J.S.A.* 2C:29–9. *State v. Brown*, 394 *N.J.Super.* 492, 504–05, 927 *A.*2d 569 (App.Div.2007) (citations and

internal quotation marks omitted).[3] Nevertheless, the overall purpose of the DV Act was to protect the interests of victims of domestic violence. *Id.* at 504, 927 *A.*2d 569.

The sentence quoted above is structured in three parts. First, there is the predicate for its application, which is the filing of a criminal complaint arising out of the same incident as the domestic violence action. Second, there is the prohibition itself. Third, there are two exceptions, (1) use in prosecutions alleging a violation of the restraining order, and (2) use pursuant to *N.J.R.E.* 804(b)(1) when a witness is unavailable. There is no dispute that criminal charges have been filed against Duprey, and no allegation that Smith is unavailable to testify at the trial. Consequently, we turn our attention to the prohibition itself.

Duprey argues that the phrase "against the defendant" should be read to preclude use of the testimony only when it is used against the defendant, but not when it is used as part of the defense. We reject Duprey's argument, which is not consistent with the intent of the Legislature as expressed through the plain meaning of the statute. Had the Legislature intended to convey the meaning attributed to it by Duprey, it would have provided that the testimony "shall not be used against the defendant in the simultaneous or subsequent criminal proceeding" rather than "shall not be used in the simultaneous or subsequent criminal proceeding against the defendant." Duprey ignores the fact that "against the defendant" immediately follows "criminal proceeding" rather than "shall not be used against."

The prohibition is broadly written and appears to apply to any use of the testimony at a criminal trial, absent the applicability of one of the exceptions. Such a broad interpretation, however, would interfere with a criminal defendant's rights under the Confrontation Clause, as the Attorney General argues in his

---

[3] We note that *Brown, supra,* 394 *N.J.Super.* at 505–06, 927 *A.*2d 569, held that collateral estoppel does not bar a criminal prosecution against a domestic violence defendant if the underlying DV complaint is dismissed on the merits.

amicus brief.  If the DV complainant were unable to appear at trial, his or her testimony could be introduced under *N.J.R.E.* 804(b)(1), which is one of the statutory exceptions.  However, if the complainant appeared and testified, application of the statute to bar use of the DV-trial testimony for impeachment purposes would impair the criminal defendant's ability to cross-examine that witness.

As the Supreme Court explained in *State v. Guenther,* 181 *N.J.* 129, 147–48, 854 *A.*2d 308 (2004),

> The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee a criminal defendant the right to confront "the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." *U.S. Const.* amend. VI; *N.J. Const.* art. I, ¶ 10. We have observed that both rights are essential to a " 'fair opportunity to defend against the State's accusations,' " and are, therefore, essential for a fair trial. *State v. Garron,* 177 *N.J.* 147, 169 [827 *A.*2d 243] (2003) (quoting *Chambers v. Mississippi,* 410 *U.S.* 284, 294, 93 *S.Ct.* 1038, 1045, 35 *L.Ed.*2d 297, 308 (1973)), *cert. denied,* 540 *U.S.* 1160, 124 *S.Ct.* 1169, 157 *L.Ed.*2d 1204 (2004).  A defendant's right to confrontation is exercised through cross-examination, which is recognized as the most effective means of testing the State's evidence and ensuring its reliability. *Lilly v. Virginia,* 527 *U.S.* 116, 124, 119 *S.Ct.* 1887, 1894, 144 *L.Ed.*2d 117, 126 (1999); *California v. Green,* 399 *U.S.* 149, 158, 90 *S.Ct.* 1930, 1935, 26 *L.Ed.*2d 489, 497 (1970) (stating that cross-examination is " 'greatest legal engine ever invented for the discovery of truth' ") (quoting 5 *Wigmore* § 1367); *Pointer v. Texas,* 380 *U.S.* 400, 404, 85 *S.Ct.* 1065, 1068, 13 *L.Ed.*2d 923, 926 (1965).
>
> The right to confrontation and compulsory process are intended to accommodate "legitimate interests in the criminal trial process, such as established rules of evidence and procedure designed to ensure the fairness and reliability of criminal trials." *Garron, supra,* 177 *N.J.* at 169 [827 *A.*2d 243] (quoting *Chambers, supra,* 410 *U.S.* at 295, 302, 93 *S.Ct.* at 1046, 1049, 35 *L.Ed.*2d at 309, 313); *see also State v. Budis,* [125 *N.J.* 519, 531–32, 593 *A.*2d 784 (1991) ]. Those rights, however, do not bow to "the mechanistic application of a state's rules of evidence or procedure [that] would undermine the truth-finding function by excluding relevant evidence necessary to a defendant's ability to defend against the charged offenses." *Garron, supra,* 177 *N.J.* at 169 [827 *A.*2d 243] (citing *Chambers, supra,* 410 *U.S.* at 302, 93 *S.Ct.* at 1049, 35 *L.Ed.*2d at 313; *Budis, supra,* 125 *N.J.* at 532 [593 *A.*2d 784] ).

Nevertheless, in *Guenther, supra,* 181 *N.J.* at 149, 854 *A.*2d 308 (citing *Davis v. Alaska,* 415 *U.S.* 308, 316, 94 *S.Ct.* 1105, 1110, 39 *L.Ed.*2d 347, 353–54 (1974)), which involved New Jersey's Rape Shield Law, *N.J.S.A.* 2C:14–7, the Court noted that the United States Supreme Court has drawn a distinction for Confrontation

Clause purposes "between a general attack on credibility and a more particular attack on credibility."

> As the [Supreme] Court noted, the use of a prior conviction for the purpose of having a jury "infer that the witness character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony" is a general attack on credibility. [*Davis, supra,* 415 *U.S.* at 316, 94 *S.Ct.* at 1110, 39 *L.Ed.*2d at 353–54]. The examination of a witness "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case" is a particular attack on credibility. *Ibid.* The Court suggested that a particular attack on credibility is entitled to special protection under the Confrontation Clause. *Id.* at 316–17, 94 *S.Ct.* at 1110–11, 39 *L.Ed.*2d at 353–54. The Court "recognized that the exposure of a witness motivation [such as bias] in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Ibid.* On the other hand, there was no suggestion in Davis that the use of the prior juvenile record to impeach the witness's character for truthfulness-a general attack on credibility-in violation of Alaska's rules would have been compelled under the Confrontation Clause. Justice Stewart, in his concurring opinion, drove home the point by stating, "I would emphasize that the Court neither holds nor suggests that the Constitution confers a right in every case to impeach the general credibility of a witness through cross-examination about his past delinquency adjudications or criminal convictions." *Davis, supra,* 415 *U.S.* at 321, 94 *S.Ct.* at 1112–13, 39 *L.Ed.*2d at 356 (Stewart, J., concurring).

[*Guenther, supra,* 181 *N.J.* at 149, 854 *A.*2d 308.]

Applying those principles, we conclude that the trial testimony of a DV complainant must be available for use by the defendant during cross-examination to impeach contradictory or inconsistent testimony that is material to the charges against the defendant, or to show bias, prejudice, or ulterior motives on the part of the witness. We reject the State's suggestion that use of the trial testimony must be limited to "a critical issue" and that the proponent of the evidence must demonstrate that it is "the only available evidence" on that issue. Such stringencies "would undermine the truth-finding function [of a criminal trial] by excluding relevant evidence necessary to a defendant's ability to defend against the charged offenses." *Garron, supra,* 177 *N.J.* at 169, 827 *A.*2d 243 (citing *Chambers, supra,* 410 *U.S.* at 302, 93 *S.Ct.* at 1049, 35 *L.Ed.*2d at 313; *Budis, supra,* 125 *N.J.* at 532, 593 *A.*2d 784).

A trial judge shall exercise discretion in precluding lines of inquiry that he or she finds relate solely to "general impeachment." The "ultimate question" for the trial judge in making that determination is "whether 'exclusion serves the interests of fairness and reliability.'" *State v. Castagna,* 187 *N.J.* 293, 310, 901 *A.*2d 363 (2006) (quoting *State v. Williams,* 184 *N.J.* 432, 444, 877 *A.*2d 1258 (2005)).

■ Although *N.J.S.A.* 2C:25–29(a) prohibits use of a DV defendant's testimony as affirmative evidence in the related criminal prosecution, we agree with the motion judge that, if a defendant chooses to testify, he or she would be subject to cross-examination to the same extent as the DV complainant. As the United States Supreme Court observed in *Harris v. New York,* 401 *U.S.* 222, 225, 91 *S.Ct.* 643, 645–46, 28 *L.Ed.*2d 1, 4 (1971) (internal citations omitted), "[e]very criminal defendant is privileged to testify in his own defense or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully...."

Our Supreme Court relied on that principle in holding that a freely given and otherwise trustworthy statement taken from a defendant in violation of his or her rights under *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), can nevertheless be used for the purposes of impeachment if the defendant takes the stand at trial. *State v. Burris,* 145 *N.J.* 509, 522–36, 679 *A.*2d 121 (1996). However, such use is limited.

Limiting the use of the type of evidence in question to impeachment of credibility on cross-examination ensures that such evidence will be used only should the defendant give testimony at variance with the earlier statement. Realistically, a court cannot prevent false testimony by a defendant. However, if a defendant should falsely testify about a matter to which the State has contrary evidence, then the State need not sit idly by.

[*Id.* at 530–31, 679 *A.*2d 121.]

As noted at the beginning, our "overriding goal" in interpreting a statute "is to determine as best we can the intent of the Legislature, and to give effect to that intent." *Hudson, supra,*

209 *N.J.* at 529, 39 *A.*3d 150 (citing *Shelley, supra,* 205 *N.J.* at 323, 15 *A.*3d 818; *DiProspero, supra,* 183 *N.J.* at 492, 874 *A.*2d 1039). There is no reason to believe that the Legislature intended *N.J.S.A.* 2C:25–29(a) to enable a DV defendant to testify untruthfully at a subsequent criminal trial without fear of impeachment, in contrast to its evident intention that the defendant's testimony not be available for use by the State as affirmative evidence.

Consequently, we affirm the Law Division's May 20, 2011 order permitting Duprey, and the State if Duprey testifies at trial, to use the testimony given by the parties at the DV hearing, solely for the purposes of impeachment, consistent with the parameters outlined in this opinion.

Affirmed.