**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2933-16T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CASIMIR RUPINSKI, III,

     Defendant-Appellant.

_____

Argued December 12, 2018 – Decided  January 10, 2019

Before Judges Accurso, Vernoia and Moynihan.

On appeal from Superior Court of New Jersey, Law Division, Cape May County, Municipal Appeal No. 06-05-16.

Michael J. Ward, IV, argued the cause for appellant.

Edward H. Shim, Assistant Prosecutor, argued the cause for respondent (Jeffrey H. Sutherland, Cape May County Prosecutor, attorney; Edward H. Shim, of counsel and on the brief).

PER CURIAM

Defendant Casimir Rupinski, III, appeals from a Law Division order entered after a de novo hearing on the record before the Middle Township municipal court finding him guilty of simple assault, N.J.S.A. 2C:12-1(a)(1). Based on our review of the arguments advanced on appeal and in light of the record and applicable law, we affirm.

I.

In March 2015 defendant was arrested and charged with simple assault after his former girlfriend, D.F.,[1] reported to Middle Township Police Officer William Lamanteer that defendant pushed her down and punched her in the side of her head during an altercation in the bedroom of D.F.'s home. During the municipal court trial that followed, Lamanteer, D.F. and her friend, V.B., and D.F.'s adult son, T.F., who was present in the home when the alleged assault occurred, testified for the State. Defendant testified on his own behalf.

Following the presentation of the evidence and the summations of counsel, the municipal court judge rendered a comprehensive bench opinion, making detailed factual and credibility findings supporting her determination that defendant was guilty of simple assault. The judge sentenced defendant to ninety

---

[1] We use initials to identify the victim and witnesses to protect the privacy and identity of the victim.

A-2933-16T2

days in jail and the payment of fines and penalties. Defendant appealed to the Law Division, and the municipal court judge granted a stay of defendant's custodial sentence pending that appeal.

The Law Division judge conducted a trial de novo on the record before the municipal court. In a well-reasoned and detailed oral opinion, the judge made the following credibility determinations and findings of fact.

Defendant and D.F. dated for approximately two years prior to January 2015 and remained friendly and stayed in contact during the months following their break-up. On the evening of March 25, 2015, D.F. was at a restaurant and bar with friends, including V.B. D.F. texted defendant and requested that he pick her up and drive her home because she had consumed two beers and was upset because her godfather had passed away and "could use someone to talk to."

After defendant arrived at the restaurant, he drank a beer and D.F. ordered a mixed alcoholic drink. When D.F. stepped outside of the bar for a cigarette, a young man approached her and asked for a cigarette. D.F. testified that after she returned to the bar, defendant appeared angry at her interaction with the young man, who had also entered the bar.

Defendant drove D.F. to her home, where they went to her bedroom, talked for a while and then had sexual relations. At some point, defendant left the bed, went into the bathroom adjacent to the bedroom, and returned screaming that D.F. was a "whore" and saying he should take D.F. back to the bar so the young man could take her to her godfather's funeral.

D.F. told defendant to stop yelling as she walked toward the bathroom. Defendant angrily pushed on her shoulder and she stumbled backwards. She pushed back and defendant punched D.F. in the head and caused her to fall. As she began to get up, she saw defendant pull his right arm back. Believing defendant was about to strike her again, she grabbed defendant by the testicles and twisted them. Defendant struck D.F. in the head and she fell to the floor.

D.F.'s adult son, T.F., was in the house, heard something hit the floor and went to investigate. T.F. entered the room and saw defendant getting dressed. Defendant then left the home. T.F. found D.F. in the bathroom. She had blood on the side of her neck and face.

D.F. called 9-1-1 ten minutes later. Officer Lamanteer responded and found D.F. visibly upset. She reported that she had been assaulted by defendant. Officer Lamanteer took photographs of D.F.'s injuries that showed black and blue marks by her left ear and on her left wrist, a bruise on her right shoulder

4

and breast, a swollen lip and a cut on her left ear. D.F. refused medical treatment because she did not have medical insurance. Officer Lamanteer did not smell alcohol on D.F.'s breath and did not believe she was intoxicated.

Defendant was arrested a short time later by the Lower Township Police Department at his home because there was evidence he was involved in a domestic violence incident with a visible sign of injury to the alleged victim. Defendant was turned over to Lamanteer, who described defendant as belligerent, agitated and uncooperative. In response to a question posed by Lamanteer, defendant said he was not injured.

Defendant testified at trial that he and D.F. had a prior dating relationship and that on March 25, 2015, he met her at the bar after she requested that he provide her with a ride home. He acknowledged seeing D.F. speak to a man outside of the bar and said they laughed about it. He made a comment that she was "still being social" and "guess[ed]" D.F. took the comment "the wrong way."

Defendant explained that he drove D.F. to her home and they went inside. According to defendant, D.F. made herself a drink with whiskey, but he did not drink with her. He said that after he and D.F. had sexual relations, she went into the bathroom and returned with a second drink. Defendant explained that he

A-2933-16T2

and D.F. then argued about the funeral, with defendant questioning D.F. about why her two sons would not accompany her.

Defendant further testified D.F. became irate about his comments concerning her sons and he began to gather his clothes so he could leave. Defendant stated that D.F. than "ran over and grabbed [his] testicles" and told him that he was "not going anywhere until [they] finish this." Defendant said he tried to get D.F. to release her grip and "pushed her with two hands to get her off." Defendant explained D.F. stumbled and hit the bookcase. Defendant asserted he ran into the bathroom and tried closing the door, but D.F. ran into the bathroom door "with all her force, with all her body."

Defendant said he was in the bedroom as T.F. entered. He told T.F. his mother "was being irate" and requested that T.F. remain inside the room while defendant dressed. According to defendant, he then quickly dressed and left the home.

The Law Division judge agreed with, and deferred to, the municipal court's assessment that defendant's testimony about what occurred in D.F.'s bedroom was not credible and that D.F.'s and T.F.'s testimony was credible. The Law Division judge also made detailed independent findings based on his review of the record supporting the credibility determination.

The judge also rejected defendant's self-defense claim and found defendant became angry with D.F. while in the bedroom, pushed her and caused her to stumble and struck her head with his right hand. The judge also found D.F.'s visible injuries were consistent with those actions. The judge further found D.F. grabbed defendant's testicles only so defendant would not hit her again and that, in response, defendant struck D.F. with a closed fist punch.

The judge found defendant guilty of simple assault. The judge imposed a ninety-day jail sentence and required that defendant pay mandatory fines and penalties and court costs. This appeal followed.

Defendant presents the following arguments for our consideration.

POINT I

THE MUNICIPAL COURT AND THE LAW DIVISION JUDGE ERRED AS A MATTER OF LAW WHEN THEY RULED THAT THE POLICE DID NOT REQUIRE A WARRANT TO ENTER DEFENDANT'S RESIDENCE IN LOWER TOWNSHIP AT 3:00 A.M. FOR THE PURPOSE OF AROUSING HIM OUT OF BED AND ARRESTING HIM, AND THE COMPLAINT AGAINST THE DEFENDANT SHOULD HAVE BEEN DISMISSED.

a. No exigent circumstances existed on March 26, 2015 that would excuse the failure to obtain an arrest warrant prior to the Lower Township Police Department's entry into the Rupinski home.

A-2933-16T2

POINT II

THE FAILURE OF THE MIDDLE TOWNSHIP POLICE DEPARTMENT TO OBTAIN AND PRESERVE CRITICAL EVIDENCE, AND PROVIDE COPIES OF RECORDINGS OF THE DEFENDANT WHILE HE WAS IN THE DEPARTMENT'S CUSTODY WERE HIGHLY PREJUDICIAL AND UNFAIRLY LIMITED THE ABILITY OF THE DEFENDANT, AND WARRANTED DISMISSAL OF OFFICER LAMANTEER'S COMPLAINT.

POINT III

THE FAILURE OF THE MIDDLE TOWNSHIP POLICE DEPARTMENT TO PRESERVE ANY RECORDING OF THE EX PARTE TEMPORARY RESTRAINING ORDER APPLICATION (AS REQUIRED BY COURT RULE) WAS PREJUDICIAL TO THE DEFENDANT AND VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO CONFRONT HIS ACCUSER.

POINT IV

THE MUNICIPAL COURT IMPROPERLY REFUSED TO ADMIT INTO EVIDENCE THE PHOTOGRAPHS OF DEFENDANT'S INJURIES.

POINT V

THE MUNICIPAL COURT'S DECISION NOT TO INCLUDE THE ENTIRE TESTIMONIAL TRANSCRIPT OF THE PARTIES' TESTIMONY BEFORE NEW JERSEY SUPERIOR COURT JUDGE RAUH AS PART OF THE MUNICIPAL COURT RECORD WAS WHOLLY UNREASONABLE, IN LIGHT OF THE MUNICIPAL COURT'S DECISION

A-2933-16T2

TO ALLOW THE PROSECUTOR TO UTILIZE THE TRANSCRIPT FOR CROSS EXAMINATION PURPOSES.

POINT VI

THE MUNICIPAL COURT AND THE LAW DIVISION JUDGE ERRED WHEN THEY FOUND [D.F.'S] TESTIMONY TO BE CREDIBLE IN LIGHT OF HER NUMEROUS CONTRADICTORY STATEMENTS TO MEMBERS OF THE MIDDLE TOWNSHIP POLICE DEPARTMENT AND HER TESTIMONY AT THE FINAL RESTRAINING ORDER HEARING BEFORE JUDGE RAUH.

POINT VII

THE MUNICIPAL COURT AND THE LAW DIVISION ERRED WHEN THEY FOUND [D.F.'S] TESTIMONY TO BE CREDIBLE BECAUSE THEY FAILED TO ADDRESS THE FACT THAT [D.F.'S] INTOXICATED RECOLLECTION OF EVENTS GROSSLY CONTRADICTED THE TESTIMONY OF THE MOST CREDIBLE PROSECUTION WITNESS, HER VERY SOBER SON [T.F.].

POINT VIII

THE MUNICIPAL COURT TESTIMONY OF THE APPARENTLY INTOXICATED [D.F.] REGARDING THE NIGHT IN QUESTION ALSO CONTRADICTED HER PRIOR COURT TESTIMONY UNDER OATH AND CREATED MORE THAN A REASONABLE DOUBT REGARDING THE DEFENDANT'S GUILT.

A-2933-16T2

POINT IX

THE UNCONTROVERTED CREDIBLE EVIDENCE OF MR. RUPINSKI ESTABLISHED THAT HE ACTED IN SELF[-]DEFENSE IN ORDER TO GET [D.F.] TO RELEASE HER GRIP ON HIS TESTICLES AND SCROTUM AND THEREFORE MR. RUPINSKI WAS NOT GUILTY OF SIMPLE ASSAULT.

II.

On an appeal taken from the Law Division's final decision, "[o]ur review is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005). This requires "'consideration of the proofs as a whole,' and not merely those offered by the defendant." State v. Kuropchak, 221 N.J. 368, 383 (2015) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). "Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result[.]" Ibid. (alteration in original) (quoting R. 2:10-2). Like the Law Division, we defer to credibility findings made by the municipal court. Id. at 382.

When the Law Division agrees with the municipal court, the two-court rule must be considered. "Under the two-court rule, appellate courts ordinarily should not undertake to alter concurrent findings of facts and credibility

10

determinations made by two lower courts absent a very obvious and exceptional showing of error." State v. Locurto, 157 N.J. 463, 474 (1999).

Measured against these principles, we find defendant's arguments in Points VI, VII, VIII and IX of his brief to be without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), other than to note that the judge's fact and credibility findings are not only consistent with those made by the municipal court judge, they are also amply supported by the trial record. See Locurto, 157 N.J. at 474.                               .

We are also unpersuaded by defendant's contention that his conviction should be reversed because he was arrested without the prior issuance of an arrest warrant.  The Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, "broadened the discretion of a police officer to arrest an alleged perpetrator . . . provided that the officer had probable cause to believe the incident occurred." Wildoner v. Borough of Ramsey, 162 N.J. 375, 388 (2000). "The purpose of this broadened authority to arrest was not to punish the perpetrator, but to protect the victim." Ibid.  "[T]he Legislature attempted to assure that more arrests would be made, and more victims protected, from domestic violence." Ibid.

The PDVA mandates that "a law enforcement officer responding to the

incident," after determining probable cause exists to believe domestic violence occurred, "shall arrest the person who is alleged to be the person who subjected the victim to domestic violence," N.J.S.A. 2C:25-21(a), if "[t]he victim exhibits signs of injury caused by an act of domestic violence," N.J.S.A. 2C:25-21(a)(1). However, the statute, which has been characterized as the "mandatory arrest provision," must "be read and construed with deep respect for, and adherence to, the constitutional underpinnings of our search and seizure protections." State v. Bryant, 227 N.J. 60, 74 (2016).

The record shows Officer Lamanteer had probable cause to arrest defendant pursuant to N.J.S.A. 2C:25-21(a)(1). D.F. reported defendant committed an act of domestic violence, a simple assault,[2] and she showed visible signs of injury that were consistent with her report. Thus, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Wildoner, 162 N.J. at 389 (first alteration in original) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Moreover, although the police entered defendant's home without a

---

[2] "Assault" under N.J.S.A. 2C:12-1 is a predicate act of "domestic violence" under the PDVA. N.J.S.A. 2C:25-19(a)(2).

12

warrant to make the arrest, it is undisputed they did so with the consent of defendant's mother, who also resided at the home. See generally State v. Cushing, 226 N.J. 187, 198-200 (2016) (explaining principles permitting third-party consent to search a home).

Defendant also contends his conviction should be reversed because the Middle Township Police Department failed to obtain and preserve critical evidence relevant to his defense resulting in a violation of his constitutional right to confront Officer Lamanteer. More particularly, defendant argues Officer Lamanteer took only one photograph of D.F.'s injured ear which failed to accurately depict her injury and failed to take photographs of D.F.'s bedroom and bathroom. He also argues the State failed to produce video recordings of him while he was in the police car and at the police station following his arrest.

We reject defendant's contention that his rights were violated because Officer Lamanteer failed to take photographs defendant believed he should have taken. The police are not obligated to develop or collect any particular evidence, and defendant's rights were not violated by Officer Lamanteer's purported failure to take photographs defendant believes might support his defense. See State v. Gordon, 261 N.J. Super. 462, 465 (App. Div. 1993) ("We are aware of no case in any jurisdiction which imposes a duty to create evidence.").

We also reject defendant's assertion he is entitled to a reversal of his conviction because the State did not preserve video recordings. Where there is a claimed loss or destruction of evidence, "the court must determine (1) whether there was bad faith or connivance on the part of the government and (2) whether defendant was prejudiced by the loss or destruction of the evidence." State v. Washington, 165 N.J. Super. 149, 155 (App. Div. 1979). Additionally, the court is required to determine "whether the evidence was sufficiently material to the defense." State v. Dreher, 302 N.J. Super. 408, 483 (App. Div. 1997). "To be material, the 'evidence must both possess an exculpatory value that was apparent before [it] was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" Ibid. (alteration in original) (quoting California v. Trombetta, 467 U.S. 479, 489 (1984)).

As the judge correctly determined, defendant made no such showing here. Defendant presented no evidence showing the State acted in bad faith, that the recordings had any exculpatory value or that his defense was in any manner prejudiced. See Washington, 165 N.J. Super. at 155. The loss or destruction of the recordings provides no basis for a reversal of defendant's conviction.

Defendant next contends the municipal court judge erred by denying his request to admit the full transcript from the domestic violence restraining order hearing. He argues the entire transcript should have been admitted because the court allowed the State to cross-examine defendant based on the transcript of his testimony at the domestic violence restraining order hearing. We review a trial judge's evidentiary rulings for an abuse of discretion. State v. Terrell, 452 N.J. Super. 226, 248 (App. Div. 2016). We find no abuse of discretion here.

N.J.S.A. 2C:25-29(a) prohibits the use of testimony given by the plaintiff or defendant in a domestic violence matter under the PDVA "in the simultaneous or subsequent criminal proceeding against the defendant, other than . . . where it would otherwise be admissible hearsay under the rules of evidence that govern where a party is unavailable." We have held, however, that N.J.S.A. 2C:25-29(a) allows the defendant's use of the domestic violence hearing testimony of the plaintiff "during cross-examination to impeach contradictory or inconsistent testimony that is material to the charges . . . or to show bias, prejudice, or ulterior motives on the part of the witness." State v. Duprey, 427 N.J. Super. 314, 323 (App. Div. 2012). Where a defendant chooses to testify at a criminal trial, he or she may be cross-examined using his or her prior testimony at the domestic

violence restraining order hearing "to the same extent as the [domestic violence] complainant." Id. at 324.

Here, the municipal court judge and Law Division judge applied these principles and allowed the State's use of defendant's testimony from the restraining order hearing during the State's cross-examination of him. Defendant offers no legal support for his contention that the entirety of the domestic violence proceeding transcript was admissible simply because the State properly used a portion of it to cross-examine him. Moreover, defendant was free to cross-examine D.F. at trial by using her testimony at the domestic violence proceeding. We therefore discern no abuse of discretion in the court's denial of defendant's request to admit the entire transcript and we otherwise reject defendant's contention because he failed to include the transcript in the record on appeal. See Cmty. Hosp. Grp., Inc. v. Blume Goldfaden Berkowitz Donnelly Fried & Forte, P.C., 381 N.J. Super. 119, 127 (App. Div. 2005) (stating an appellate court is not "obliged to attempt review of an issue when the relevant portions of the record are not included").

We agree that with defendant's contention that the Law Division judge erred by finding that the photographs of lacerations in defendant's pubic area were inadmissible because defendant could not authenticate photographs he had

16

not taken. Defendant's testimony that the photographs accurately depicted injuries inflicted by D.F. was sufficient to satisfy the authentication requirement of N.J.R.E. 901. See Brenman v. Demello, 191 N.J. 18, 21 (2007) (finding admissibility of photographs "rests on whether [they] fairly and accurately depict[] what [they] purport to represent"). The error, however, was harmless because there is no dispute that D.F. grabbed defendant's testicles—D.F. admitted doing so. There is also no dispute defendant used force against D.F. He contends only that he did so in self-defense. Thus, the issue presented for the court's determination was whether defendant initiated the physical contact with D.F., and photographs confirming his testimony that he suffered lacerations are of little value in making that assessment. Exclusion of the photographs was not clearly capable of producing an unjust result. R. 2:10-2.

Defendant's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2933-16T2