# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3999-18T4
A-4000-18T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDDIE GONZALEZ,

    Defendant-Appellant.

_____

Submitted September 16, 2020 – Decided October 6, 2020

Before Judges Alvarez and Geiger.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 17-01-0269 and 17-01-0271.

Robert Carter Pierce, attorney for appellant.

Theodore N. Stephens, II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Eddie Gonzalez was convicted and sentenced on December 14, 2018, to five concurrent county jail terms of 365 days on Essex County Indictment 17-01-0269, to be followed by two concurrent terms of five years with forty-two months of parole ineligibility on Essex County Indictment 17-01-0271.  The convictions were the product of two separate trials.  We now affirm.

After six and a half years as an officer, defendant was terminated from the Newark Police Department in 2008.  The department required he return department-issued equipment, although he had the right to keep items he purchased for himself, such as his uniform.  At the time, defendant claimed he could not locate his badge.  He maintained ownership of two registered handguns.

In early winter 2013, defendant and C.S.[1] began a dating relationship that lasted for approximately a year.  On November 20, 2014, C.S. obtained a temporary restraining order (TRO) under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, against defendant.  An amended TRO was served on him the following day.  The form, preprinted language states:

---

[1] We use initials to protect the identity of domestic violence victims.  R. 1:38(d)(9)-(10).

PROHIBITION AGAINST POSSESSION OF WEAPONS: You are prohibited from possessing any and all firearms or other weapons and must immediately surrender these firearms, weapons, permit(s) to carry, application(s) to purchase firearms and firearms purchaser ID card to the officer serving this [c]ourt [o]rder. Failure to do so will result in your arrest and incarceration.

Additionally, the form language included the following:

WARRANT TO SEARCH FOR AND TO SEIZE WEAPONS FOR SAFEKEEPING TO ANY LAW ENFORCEMENT OFFICER HAVING JURISDICTION: This [o]rder shall serve as a warrant to search for and seize any issued permit to carry a firearm, application to purchase a firearm and firearms purchaser identification card issued to . . . defendant and the following firearm(s) or other weapon(s):

1. You are hereby commanded to search for the above described weapons and/or permits to carry a firearm, application to purchase a firearm and firearms purchaser identification card and to serve a copy of this [o]rder upon the person at the premises or location described: See Affidavit.

The November 21, 2014 amended TRO included the same language.

Defendant acknowledged receipt of the orders by his signature but refused to sign for a January 7, 2015 TRO. None were served while he was home.

The final restraining order (FRO) included this paragraph:

10. ☒     ☒     PROHIBITIONS AGAINST POSSESSION OF WEAPONS:

3

> You are prohibited from possessing any and all firearms or other weapons and must immediately surrender these firearms, weapons, permit(s) to carry, application(s) to purchase firearms and firearms purchaser ID card to the officer serving this [c]ourt [o]rder. Failure to do so will result in your arrest and incarceration.

After defendant was served, he too obtained a TRO against C.S., and later alleged that she violated it on February 12, 14, 15, 19, and 20, 2015. Defendant was interviewed regarding these claims by Newark Police Department Detective Antoinette Cirasella, who testified at the first trial. She also asked him if he owned any firearms, which he denied. Defendant later called Cirasella requesting she discard the papers he had given her detailing his allegations against C.S., and she explained that she could not do so. Cirasella corroborated some of defendant's claims with his friend Eva Grasso.

Upon further investigation, Cirasella verified that C.S. was elsewhere when defendant claimed she was stalking him. Cirasella also learned that defendant might still be in possession of a handgun.

By March 12, 2015, the Essex County Prosecutor's office had determined, among other things, that defendant's statements regarding C.S. were false, that he may have at times impersonated a police officer during his relationship with her, and that he continued to be in possession of firearms contrary to the prohibition contained in the domestic violence orders. During the ensuing

4

execution of a search warrant at his apartment, defendant was briefly cuffed and seated in a chair. A detective asked him if he had guns in the apartment, which defendant initially denied. Defendant later stated to the lead officer that he had already surrendered the guns. He was told that the search team had a gun detecting dog, but he persisted in his denials. Two handguns were eventually discovered in a duffle bag in his laundry room. Also found in his apartment were a badge holder and identification card for the Newark Police Department, as well as handcuffs. The officer at the second trial testified regarding the search and defendant's statement denying possession of the handguns.

In Indictment 17-01-0269 defendant was charged with second-degree possession of a handgun without a permit from December 1, 2013, through December 31, 2013 (count one); second-degree possession of handgun without obtaining a permit from April 1, 2014, through April 30, 2014 (count two); second-degree possession of a handgun without a permit (count three); fourth-degree giving false information to a law enforcement officer on December 22, 2014 (count four); fourth-degree giving false information to a law enforcement official on or about January 8, 2015 (count five); fourth-degree giving false information on February 14, 2015 (count six); fourth-degree giving false information to a law enforcement official on February 15, 2015 (count seven);

fourth-degree giving false information on February 19, 2015 (count eight); fourth-degree giving false information on February 20, 2015 (count nine); fourth-degree giving false information on February 12, 2015 (county ten); fourth-degree impersonating another or assuming a false identity on December 1, 2013 through December 31, 2013, N.J.S.A. 2C:21-17(1) (count eleven); and fourth-degree impersonation or assumption of a false identity between February 1, 2014 through August 20, 2014 (count twelve).

The jury convicted defendant of four counts of false reports to a law enforcement officer, N.J.S.A. 2C:28-4(b)(1) (counts four, six, nine, and ten), and fourth-degree impersonating a law enforcement official, N.J.S.A. 2C:21-17(a)(1) (count eleven). The jury acquitted him of the remaining counts: one, two, five, seven, and eight.[2]

Indictment 17-01-0271 charged defendant with third-degree possession of a .40 caliber Sig Sauer model P229 handgun on March 12, 2015, in violation of an order prohibiting him from possessing a firearm, N.J.S.A. 2C:39-7(b)(3) (count one); and third-degree possession of a .45 caliber Smith and Wesson model C545D handgun on March 12, 2015, in violation of an order prohibiting

---

[2] The parties agreed to dismiss counts three and twelve at the close of the State's case.

him from possessing a firearm (count two). A separate jury in the second trial convicted defendant of both counts of certain persons not to have weapons.

Pretrial, the trial judge granted the State's application to introduce cell phone records, including texts, and emails, together with defendant's badge and other items such as defendant's police uniform and handcuffs, seized during the search of his apartment. The judge found C.S. and the officers' testimony who performed the phone extractions from defendant's phone sufficient to establish a chain of custody, as well as the messages' reliability. Based on the nature of the charges and of the items in question, they were relevant and probative of the charge of impersonating a police officer.

Also pretrial, the judge ruled defendant's statement to the detective was admissible. In that statement, defendant discussed the restraining order he obtained against C.S. as well as the one she obtained against him. The judge decided that despite the potential for prejudice attributable to the existence of a restraining order against defendant, the orders were "interwoven into the facts of the case." Even if a restraining order is considered a prior bad act, "the probative value outweighs any [prejudicial] value. I don't know that there would [be] any prejudicial value . . . when the jury hears that the parties . . . [have] cross complaints." Another judge had conducted an earlier Rule 104 hearing in

7                                                                    A-3999-18T4

December 2016, finding defendant's statement to be admissible – and the judge who conducted the pretrial hearings, and presided over the trials, considered that decision to be the law of the case.

During the trial, C.S. testified that when she met defendant in November 2013 at a business meeting, he told her he was a Newark police officer. He arrived at a meeting in December 2013, dressed in his Newark police officer uniform explaining that he was late because he had just left work. He wore a uniform jacket and appeared to have a gun in the holster of his belt.

C.S. described other instances of defendant representing himself as a police officer. In December 2013, C.S. had difficulty retrieving a package from a Newark United Parcel Service facility until defendant displayed his police badge, stating he could vouch for her. In April 2014, a few months later, he arrived for dinner at her home armed and dressed in his uniform. That evening, he discussed the nature of his work, and described how handled his gun. On one occasion, C.S. picked up his police uniforms at the dry cleaners.

In that time frame, defendant was pulled over for going through a stop sign, while C.S. was in the vehicle. C.S. saw him show his badge to the officer, after which the officer allowed defendant to drive away. Defendant sent C.S. a

A-3999-18T4

resume he asked her to edit for him, on which he listed his current employment as being with the Newark Police Department since 2001.

At trial, C.S. denied violating the restraining order defendant obtained against her, producing receipts and other documentation establishing that she was present elsewhere. The State also introduced time-stamped photos of C.S. with friends, taken from surveillance cameras at locations other than where defendant claimed she had followed him. A friend of C.S. corroborated her presence out-of-state on one occasion.

At the close of the State's case, defendant moved for acquittal since he gained no pecuniary benefit from the deception and could therefore not be found guilty of impersonation under N.J.S.A. 2C:21-17(1). The judge denied the motion, concluding that the benefit required by the statute included defendant's impersonation to aid C.S. in retrieving a package, to assist him in avoiding a motor vehicle ticket, and to generally impress C.S. so she would continue her romantic involvement with him.

In the trial of the second indictment, the prosecutor commented on defendant's failure to "self-admit." We describe his statements in greater detail in the relevant section. Once the jury began deliberations, defendant moved to dismiss the charges based on mandatory joinder/double jeopardy grounds. He

asserted the State had failed to prove that he had carried a weapon without a permit in the first trial, and thus no further prosecution was permissible. The judge held that in the second case, contrary to the first, the State had to prove that defendant possessed weapons in violation of a domestic violence order employing "different witnesses and different evidence." In the first trial, the State had to prove defendant's possession without a permit on social occasions. Thus, she denied the motion.

Defendant argues the following regarding Indictment No. 17-01-0269:

> POINT I: THE TRIAL COURT ERRED BY NOT GRANTING [DEFENDANT'S] MOTION FOR A JUDGMENT OF ACQUITTAL FOR THE IMPERSONATION CHARGE BECAUSE THE STATE DID NOT PROVIDE ANY EVIDENCE THAT THERE WAS AN ACTUAL OR PROSPECTIVE "BENEFIT" OR "INJURY" AS IS REQUIRED IN N.J.S.A. 2C:21-17(a)(1).
>
> POINT II: [DEFENDANT] WAS DEPRIVED OF DUE PROCESS AND THE CERTAINTY OF A UNANIMOUS VERDICT BECAUSE THE COURT FAILED TO INSTRUCT THE JURY TO FIND, BEFORE CONVICTION, THAT [DEFENDANT] COMMITTED A SPECIFIC ONE OF THE VARIOUS ALLEGATIONS OF IMPERSONATING ANOTHER FOR A BENEFIT. (NOT RAISED BELOW).
>
> POINT III: THE TRIAL COURT ERRED BY PERMITTING THE STATE TO USE [DEFENDANT'S] FEBRUARY 26, 2015 SWORN STATEMENT TO DETECTIVE CIRASELLA IN

THEIR CASE-IN-CHIEF BECAUSE IT VIOLATED THE PROHIBITION AGAINST USING TESTIMONY GIVEN BY A PLAINTIFF OR DEFENDANT IN A DOMESTIC VIOLENCE ACTION AGAINST A DEFENDANT IN A CRIMINAL PROCEEDING.

POINT IV: THE TRIAL COURT ERRED BY PERMITTING THE STATE TO ADMIT EVIDENCE THAT THERE WAS AN ACTIVE RESTRAINING ORDER AGAINST [DEFENDANT], WHICH HE VIOLATED BY POSSESSING THE TWO HANDGUNS SEIZED FROM HIS APARTMENT ON MARCH 12, 2015 AND THEN FAILING TO GIVE A CURATIVE INSTRUCTION, SUA SPONTE. (NOT RAISED BELOW).

Defendant further alleges these errors for our consideration as to Indictment No. 17-01-0271:

POINT I: THE TRIAL COURT ERRED BY NOT GRANTING MR. GONZALEZ' MOTION TO SUPPRESS BECAUSE, WHETHER BASED ON THE PRIVILEGE AGAINST SELF-INCRIMINATION OR THE DOCTRINE OF FUNDAMENTAL FAIRNESS, THE STATE WAS REQUIRED FIRST TO ASK MR. GONZALEZ WHETHER HE OWNED ANY FIREARMS AND THEN SEARCH MR. GONZALEZ' HOME AND SEIZE HIS WEAPONS PURSUANT TO THE TRO, WHICH WOULD PROHIBIT THE STATE FROM CHARGING MR. GONZALEZ WITH THE CERTAIN PERSONS NOT TO POSSESS FIREARM CHARGES.

POINT II: THE PROSECUTOR COMMITTED MISCONDUCT IN SUMMATION BY MISCHARACTERIZING THE LAW CONCERNING

11

THE PREVENTION OF DOMESTIC VIOLENCE ACT. (Not Raised Below.)

POINT III: THE TRIAL COURT ERRED BY NOT GRANTING MR. GONZALEZ' MOTION TO DISMISS THE INDICTMENT BASED UPON MANDATORY JOINDER OF OFFENSES AND DOUBLE JEOPARDY.

POINT IV: MR. GONZALEZ WAS DEPRIVED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO FILE A MOTION TO SUPPRESS MR. GONZALEZ' STATEMENT GIVEN TO DETECTIVE MARINO DURING THE EXECUTION OF THE MARCH 12, 2015 SEARCH WARRANT. (Not Raised Below.)

I.

Defendant contends the court's ruling that the impersonation statute does not require the actor to obtain a pecuniary gain is reversible error. We have previously stated that to be guilty to any degree of impersonation, a defendant must engage in the act "for the purpose of obtaining a benefit or [to] injur[e] another." State v. Tringali, 451 N.J. Super. 18, 30-31 (App. Div. 2017) (citing N.J.S.A. 2C:21-17(a)(1)). If the benefit is worth $500 or less, the offense is graded as fourth-degree.

The question of the parameters of "benefit" the State needed to prove beyond a reasonable doubt is a question of law. It is an issue reviewed de novo. State v. Morrison, 227 N.J. 295, 308 (2016). Nonetheless, we agree with the

12

trial judge's decision that in this case defendant's impersonation satisfied the statutory requirement. His impersonation was intended to secure C.S.'s admiration and affection, a benefit. He also used his fictitious status as an officer to avoid a traffic ticket, and to assist C.S. in the release of a package to her. Given the common sense meaning of "benefit," it is apparent that defendant obtained benefits from the impersonation. See State v. Perry, 439 N.J. Super. 514, 523 (App. Div. 2015) (quoting State in Interest of K.O., 217 N.J. 161, 176 (2014)). The judge properly denied defendant's motion for acquittal.

On that score, defendant also argues that since he was charged for different activities on different dates involving different circumstances the trial judge should have instructed the jury that there had to be unanimity regarding each underlying event. Defendant participated in a charge conference and did not object to the proposed instructions.

Where, as here, defendant did not raise a challenge to the trial court's jury charge at trial, we review his claim on appeal for plain error. R. 2:10-2; State v. Funderburg, 225 N.J. 66, 79 (2016). Such "plain error requires demonstration of 'legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity

13                                                                    A-3999-18T4

to bring about an unjust result.'" State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)); see State v. Kane, 449 N.J. Super. 119, 141 (App. Div. 2017). We "must not look at portions of the charge alleged to be erroneous in isolation; rather, 'the charge should be examined as a whole to determine its overall effect,' and 'whether the challenged language was misleading or ambiguous.'" State v. McKinney, 223 N.J. 475, 494 (2015) (first quoting State v. Jordan, 147 N.J. 409, 422 (1997); and then quoting State v. Nelson, 173 N.J. 417, 447 (2002)).

"[I]n cases where there is a danger of a fragmented verdict the trial court must upon request offer a specific unanimity instruction." State v. Frisby, 174 N.J. 583, 597-98 (2002) (emphasis added) (quoting State v. Parker, 124 N.J. 628, 637 (1991)). "Ordinarily, a general instruction on the requirement of unanimity suffices to instruct the jury that it must be unanimous on whatever specifications it finds to be the predicate of a guilty verdict." Parker, 124 N.J. at 641. "The fundamental issue is whether a more specific instruction [is] required in order to avert the possibility of a fragmented verdict." Frisby, 174 N.J. at 598.

A fragmented verdict typically results when "it appears that a genuine possibility of jury confusion exists or that a conviction may occur as a result of

14

different jurors concluding that a defendant committed conceptually distinct acts." Parker, 124 N.J. at 641. We consider "whether the allegations in the [charge] were contradictory or only marginally related to each other and whether there was any tangible indication of jury confusion." Id. at 639; see also State v. Gandhi, 201 N.J. 161, 193 (2010) (stating that "[t]he core question is, in light of the allegations made and the statute charged, whether the instructions as a whole [posed] a genuine risk that the jury [would be] confused" (alterations in original) (quoting Parker, 124 N.J. at 638)).

Allegations based on "different acts and entirely different evidence" warrant a specific unanimity charge. Frisby, 174 N.J. at 599. A "reviewing court should examine two factors: whether the acts alleged are conceptually similar or are 'contradictory or only marginally related to each other,' and whether there is a 'tangible indication of jury confusion.'" Gandhi, 201 N.J. at 193 (quoting Parker, 124 N.J. at 639).

The judge read the standard model jury charge regarding unanimity. On its face, it is neither ambiguous or contradictory, and its use is in accord with the recommendation that trial judges use model charges as a means of avoiding error. Pressler & Verniero, Current N.J. Court Rules, cmt. 8.1 on R. 1:8-7 (2021) (citing State v. Pleasant, 313 N.J. Super. 325, 333-35 (App. Div. 1998)).

Nothing in the record suggests that the jury may have fragmented its verdict, or that different jurors found defendant committed different acts leading to his conviction. For us to so hold on this record would be nothing more than sheer speculation.

We find no merit to defendant's claims because we agree with the judge that the impersonation statute includes the relationship benefits defendant gained from his relationship with C.S., and avoidance of a traffic summons. We further conclude that the judge did not err in giving the jury only the general unanimity charge.

II.

It is undisputed that State v. Duprey, 427 N.J. Super. 314 (App. Div. 2012) stands for the proposition that testimony given by either party during a domestic violence proceeding "shall not be used in the simultaneous or subsequent trial proceeding against the defendant." See also N.J.S.A. 2C:25-29(a). In that case we held that statutory prohibition did not include use of the trial testimony in a subsequent proceeding as substantive evidence. That authority, the proscription, and the public policy differ from the scenario here.

This defendant objects to the admission of his false statements to an investigating officer even though they formed the basis for the charges of false

16

swearing. The statements were made outside the courtroom under oath in an effort to institute contempt charges against C.S. Neither the statute nor <u>Duprey</u> prevents the State from prosecuting false swearing. The argument is so lacking in merit as to not warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

III.

Defendant's final claim of error regarding the trial on Indictment 269 is that the State should have been prohibited from presenting to the jury the restraining order and failed by not giving a curative instruction. No objection was made during the trial; our review is under the plain error standard. Defendant argues that allowing the jury to know about the TROs and FRO meant they were informed of a prior bad act.

The judge ruled pretrial that since the parties had mutual restraining orders, and the orders were an integral part of the State's case, the probative value exceeded any potential for prejudice. As she pointed out, the prejudice here was minimal because both parties had obtained restraints, and the need for context was great. This point does not warrant further discussion in a written opinion. <u>R.</u> 2:11(e)(2).

A-3999-18T4

IV.

Defendant's first point regarding Indictment 271 is not entirely clear. He seems to be contending that the officers who served the orders were obligated "whether based on the privilege against self-incrimination or the doctrine of fundamental fairness[,]" to have asked him if he possessed weapons, which would have "prohibit[ed]" him from being charged with certain persons not to possess firearms. As a result, defendant claims, his motion to suppress physical evidence should have been granted.

The appropriate context in which to consider the argument is the fact that on March 12, 2016, the search warrant execution date, defendant had already been served with the TROs on November 21, 2014 and February 24, 2015 and an FRO on December 18, 2015. Because his handguns were registered, he attributes knowledge of his possession to the State, and some deceit or trickery to the omission of any inquiry regarding them.

We review decisions made on motions to suppress evidence deferentially, so long as factual findings are supported by sufficient credible evidence in the record. State v. Elders, 192 N.J. 224, 243 (2007). We do not ordinarily disturb a trial court's factual determinations. Whether the facts support the judge's

decision, however, is a legal question subject to de novo review. State v. Handy, 206 N.J. 39, 45 (2011).

The judge's analysis relied in part on State v. D'Orsi, 113 N.J. Super. 527 (App. Div. 1971). In that case, the defendant argued that his right against self-incrimination would be violated if he were compelled to disclose when applying for a permit to carry, that he unlawfully possessed a handgun. Id. at 530-31. We found to the contrary, that a person could apply for a permit to carry a lawfully obtained weapon without disclosing his possession of an unlawfully obtained firearm. Id. at 531. A defendant "may not justify a distinct and separate unlawful act by a mere potential of self-incrimination when avoidance is readily in his own hands, namely, first lawfully obtain a gun and then apply for a permit to carry it lawfully." Ibid.

The same reasoning applies here. Defendant knew for weeks, if not months, he was obligated to surrender his weapons. He failed to do so. Had he turned the weapons over, he would not have been charged with any crime or offense. Even when asked immediately before police began to search his home, he denied possession of the handguns. Thus, defendant's failure to comply with the restraining orders is the decision which resulted in the conviction, not any failure on the part of law enforcement. The law enforcement personnel who

served copies of the restraining orders upon him were not legally obligated to ask him whether he had guns.

## V.

In summation, the prosecutor argued to the jury that defendant had the opportunity to "self-admit." We review this argument for plain error, as the comment elicited no objection during trial. See R. 2:10-2. We construe counsel's silence regarding the argument as indicative of the lack of prejudice it actually had. See State v. Pressley, 232 N.J. 587, 593-94 (2018).

The prosecutor argued only that defendant had ample opportunity to surrender his guns, and simply did not do so. The jury knew about the language in the orders that prohibited his possession. The jury knew that for nearly five months, defendant's possession continued unabated. To characterize the prosecutor's comments as a misstatement of the law is itself a misstatement. The prosecutor's comment was not improper, certainly not plain error. This claim also lacks merit. R. 2:11(e)(2).

## VI.

Defendant also contends the trial court erred by denying his motion to dismiss the indictment based upon principles of mandatory joinder and double jeopardy. Decisions to dismiss an indictment are within the trial court's

discretion. State v. Hogan, 144 N.J. 216, 229 (1996). That exercise of discretion will not be overturned unless clearly abused. State v. Saavedra, 222 N.J. 39, 55-56 (2015). We apply the de novo review standard, examining the court's application of the relevant legal principles without deference. State v. Miles, 229 N.J. 83, 90 (2017).

In reaching her decision, the judge relied upon defendant's possession during the first trial being established through C.S.'s testimony and that of another witness, that defendant appeared to be in possession on the relevant dates without a permit to carry. In the second trial, however, the jury was presented the orders containing the prohibition, and heard about seizure of the handguns from his apartment, different facts and statutory elements. Because of those significant differences, the prosecutions did not violate double jeopardy principles, or require mandatory joinder.

The mandatory joinder rule, 3:15-1(b) and the parallel provision in the criminal code, N.J.S.A. 2C:1-8(b), provide that joinder must occur when multiple offenses are "based on the same conduct or arising from the same episode, if such offenses are known to the appropriate prosecuting officer at the time that the first trial began and are within the jurisdiction and venue of a single court." When a defendant is acquitted, he must not be prosecuted a second time

21

for a second offense that should have been tried during the first trial.  N.J.S.A. 2C:1-10(a)(2).

In order to determine whether procedural joinder is mandatory, we examine four factors:  all the offenses must be criminal, they must be based either on the same conduct or have arisen out of the same episode, the appropriate prosecuting officer must have been aware of the offenses before trial, and the offenses must be within the jurisdiction and venue of a single court. State v. Yoskowitz, 116 N.J. 679, 701 (1989).

Like the trial judge, we part company with defendant at the second factor. Mandatory joinder was not applicable because the offenses were not based on the same conduct.  In the first trial, defendant was charged with carrying a handgun without a permit to carry.  In the second, defendant was charged with possession of handguns on the date they were seized, contrary to the provisions in the restraining orders served upon him.  The offenses simply did not constitute the same conduct, nor did they arise out of the same episode.  It cannot even be said with any certainty that they involved the same guns.  Defendant was acquitted of carrying weapons without a permit prior to the entry of the restraining orders. The four elements described in Yoskowitz cannot be satisfied and mandatory joinder did not apply.

A-3999-18T4

In <u>State v. Miles</u>, 229 N.J. 83, 99 (2017), the Supreme Court found double jeopardy bars a later prosecution based on the same elements. The second offense here, however, is not the same as the first, and includes separate statutory elements. Defendant was acquitted of carrying a handgun without a permit, N.J.S.A. 2C:39-5(b)(1). In the second, he was convicted of possessing handguns despite a ban imposed upon him by way of a restraining order. N.J.S.A. 2C:39-7(b)(3). This point lacks sufficient merit to warrant additional discussion in a written opinion. <u>R.</u> 2:11(e)(2).

VII.

Defendant also contends counsel was ineffective because he failed to file a motion to suppress the statement he made while the search warrant was being executed. We have previously stated that claims of ineffective assistance of counsel are most effectively addressed through petitions for post-convictions relief, that allow for a fully developed record. <u>State v. Rambo</u>, 401 N.J. Super. 506, 525 (App. Div. 2008). Hence, we decline to address the point at this time. We leave consideration of the issue for a later application.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3999-18T4